PROVOSTY, J.
Plaintiff and J. W. Darsam were partners in the cotton brokerage business in the city of New Orleans. Darsam, having fallen behind in his accounts with the firm, executed the following:
“I hereby sell, assign, and transfer to Ed. Eisenhauer for value received one share of the capital stock of the New Orleans Cotton Exchange standing in the name of the undersigned on the books of said institution as per following certificate, viz.: No. 2613, dated 5th of December, 1902, for one share, and hereby irrevocably appoint and authorize Ed. Eisenhauer to make for and in - name and stead, the necessary transfer of said stock on the books of said institution, with power also to appoint and authorize one or more persons as a substitute or substitutes therefor, with like full power hereby ratifying and confirming all that shall be lawfully done under the authorization herein granted.
“Signed, sealed, and given at New Orleans this 19th day of September, A. D. 1904.”
Defendant admits that thereby Darsam pledged to plaintiff the said share of stock to secure whatever balance he might be found owing him on final settlement of the partnership accounts, and that this pledge was made perfect by the actual delivery of the said share of stock into the possession of plaintiff.
About eight months later the partnership was dissolved, and plaintiff east up the accounts, and found that Darsam was owing a balance of $12,682.63. 1-Ie sought to obtain from Darsam an acknowledgment of the correctness of this balance, but in vain. He then applied to the defendant to transfer the said share of stock to his name on its books, exhibiting the said power of attorney and tendering the share of stock. Defendant refused for the reason that Darsam had given it notice by formal letter that he had “recalled and revoked” said power of attorney. Plaintiff and Darsam were both of them members of the defendant exchange. Darsam at once brought suit in settlement of the partnership. In this suit he claimed that a balance was due him. As a matter of fact, judgment went against him for an amount which was stated in the oral argument to have been approximately that hereinabove mentioned as having been found by plaintiff, but which is not fixed by the record, nor mentioned in the briefs. No question is made, however, but that it was considerably greater than the market value of said share of stock. Promptly after the amount due plaintiff had been thus established defendant made the desired transfer.
The market value of the stock had greatly decreased, and plaintiff brings this suit for the difference between the market value of the stock at the time he applied for the transfer and at the time when the transfer was made, and in the alternative claims the rental value of the stock, on the theory that if the stock had beeh put in his name he *577 could have leased it, and thereby earned' rent.
The defenses are that the defendant was justified in the course it adopted, in view of the dispute over the title of plaintiff to the share of stock, and that at all events plaintiff suffered no loss as he would not have had the right as pledgee to either sell or rent the stock.
At the time the application for the transfer of the stock was made, on January 22, 1906, Act 180, p. 870, of 1904, was in force, reading:
“Ah act to establish a law uniform with the laws of other states relative to the transfer of stock in corporations.
“Be it enacted by the General Assembly of the state of Louisiana, that the delivery of a stock certificate of a corporation to a bona fide purchaser or pledgee, for value, together with a written transfer of the same, or a written power of attorney to sell, assign, and transfer the same, signed by the owner of the certificate, shall be a sufficient delivery to transfer the title as against all parties; but no such transfer shall affect the right of the corporation to pay any dividend due. upon the stock, or to treat the holder of record as the holder in fact, until such transfer is recorded upon the books of the corporation, or a new certificate is issued to the person to whom it has been so transferred.”
[1] Plaintiff was the bona fide pledgee of the stock, and therefore was entitled to have it transferred to him. But defendant contends as follows:
“When a principal notifies a corporation that he has revoked a power of attorney to transfer stock, and claims by suit that he owes the mandatory nothing, and the mandatory admits that the stock was pledged to secure the ultimate balance found to be due him, the corporation is not obligated to assume the risk of settling their account between the disputants, but may decline to transfer the stock until their respective rights to it have been determined by the courts. Purdy’s Beach, § 421.
“When two persons claim a share of stock and commence a litigation over it, the corporation cannot be compelled to decide the issues, but may refuse to transfer until the court decides the ease.”
[2] This contention fails to take into consideration said Act 180 of 1904. The defendant was informed that the pledge to plaintiff had been made bona fide to secure any balance that might be due on final settlement of the partnership accounts, and was also informed that this settlement had not yet taken place, and that therefore the pledge was in full force and operation. Having this knowledge, its plain duty under the herein-above quoted statute was to make the transfer.
[3] “The general rule is that a party entitled to a transfer of stock may maintain an action for damages against the corporation where it improperly refuses to register the transfer upon the books of the corporation.” Ruling Case Law, vo. Corp. Nos. 247, 248.
[4] The suit for the settlement of the partnership was pending for four years. During this time plaintiff took no legal steps to compel defendant to make a transfer. This inaction is pleaded as laches by which plaintiff has forfeited his right to damages. No authorities are cited on that point. Plaintiff might have brought successive suits for damages as the damages occurred, but was not bound to do so; he could wait until the entire amount of damages had been incurred, and bring one single suit. The right to sue in damages is not lost through mere inaction, so long as prescription has not accrued.
[5] It is intimated, while not expressly argued, that in order to obviate the accruing of these damages, the plaintiff should have brought a mandamus suit to compel the making of the transfer. This amounts to saying that a plaintiff who does not bring a mandamus suit to compel a corporation to accord him his legal right to have a transfer made upon its hooks loses his right to sue in damages for the wrongful refusal to make the transfer. No authorities are cited in support of that proposition, and we know of none. The corporation knew the law just as well as plaintiff did! Plaintiff had made proper demand, and thereby put *579 defendant' in default, and was not obliged to do anything more.
[6] When we come to the question of what damages plaintiff is entitled to, we find that for the depreciation in the value of the stock he is entitled to none. The stock continued to belong to Darsam, the pledgor, and any depreciation in its value was his loss, and not that of plaintiff. The situation would be different if plaintiff had had the right, as pledgee, to sell the stock; for he could then have converted the thing pledged into money, and the loss from subsequent depreciation would have fallen upon the purchaser of the stock. But a pledgee is not authorized to sell the thing pledged. C. C. arts. 3165, 3166.
Whether the act of pledge in the present case conferred authority upon the pledgee to sell the thing pledged at private sale in case of nonpayment of the debt secured by the pledge is a question which need not be considered, since he could certainly not have made such a sale until the debt secured by the pledge had been established, or become a fixed indebtedness, by a final settlement of the accounts of the firm; and the transfer was made promptly after the debt had been thus established.
[7] But the evidence shows that the practice of leasing the shares of stock of the defendant exchange prevails to a large extent, and that the average rental of this share during the time the transfer was thus illegally withheld from plaintiff was about $412.50 per year, and that there was a demand all the time for the leasing of this share of stock, and that it could have been leased at any time. Piaiutiff is entitled to the said average.
Learned counsel say that the pledgee is not entitled to use the property pledged,' except with the express or implied consent of the pledgor (citing 31 Gyc. 825; Champlain v. O’Brien [C. C.] 104 Fed. 930), and that Darsam refused to consent to this share of stock being leased, and therefore plaintiff could not have leased it.
But we think that the proposition that the pledgee may not make another use of the property pledged than that contemplated by the pledge must be taken with a qualification, and that such a qualification is to be found in the facts of the present case.
Lease, differently from sale, may be validly made of the property of another. Dennistoun v. Walton, 8 Rob. 211; Town of Morgan City v. Dalton, 112 La. 19, 36 South. 208; Merlin, Rep. vo. Bail, par. 2, No. 7; Duranton, vol. 17, No. 34; Duvergier, No. 82; Troplong, Louage, No. 98. Hence, if this stock had been transferred to plaintiff, and he had made a loase of it, the lease would have been perfectly valid. No doubt, it is not possible for a man to confer upon another a greater right than he himself has; and hence any lease which plaintiff might have made would not have been binding upon Darsam, and could have been put an end to at any time by him by redeeming the pledge; but such redemption did not in fact happen, and the possibility of it would not have prevented plaintiff from making the lease and earningj the rent. Having the title and the possession of the share of stock plaintiff could have leased it; and, under the circumstances of the case, the value of the thing pledged being very much smaller than the amount of the debt secured by it, and the pledgor execution proof, the pledgee had the moral right to make the lease.
It is safe to say the plaintiff might have leased said stock at said rental óf $412.50 during the entire time the transfer of it to him was thus illegally withheld, say, four years.
It is argued that plaintiff could not have leased the stock because, in order to entitle the lessee to the privilege of membership of the exchange, which is the only ob *581 ject for which the stock could be leased, the transfer would have had to be made to him as owner, the rules of tho exchange requiring that every member must be owner of at least one share of stock, and this could not have been done because the exchange was charged with knowledge that Darsam was the owner of the stock.
The answer is that after the exchange had transferred the title to the stock on its books to Eisenhauer as owner, as it was bound to do under the express terms of .Act 180 of 1904, it would have had the perfect right to treat Eisenhauer as owner, and to act accordingly, no matter what Darsam might say to the contrary, and no matter what it itself might know to the contrary. The whole question resolves itself under said Act 180 into whether Eisenhauer was the bona fide pledgee with right to transfer, and that he was bona fide pledgee was never contested by Darsam. Darsam admitted all along that the pledge had been made for the purpose of securing any balance that might be found to be due on final settlement, and he never pretended that there had been a final settlement. What he( contended was that when the settlement should take place he would be found to be owing nothing. This contention did not impugn in any way the good faith of the pledge nor its continued existence. The only thing that could put an end to its existence was the making of a settlement. In the same way that the only thing that can put an end to a tutor’s bond is a settlement with the minor. The nonexistence of any debt to the minor would in no way affect the continued existence of the bond in its full force and validity. The pledge, like the tutor’s bond, was not made for securing any specific or particular debt, but whatever balance might be found to be due on final settlement; and, like a tutor’s bond, it had to continue to exist until there had been a final settlement.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the plaintiff, Edward Eisenhauer, have judgment against the defendant, the New Orleans Cotton Exchange, for the sum of $1,650, with legal interest thereon from this date and for the costs of this suit.
MONROE, C. J., takes no part.
LAND, J., dissents and hands down opinion. See 73 South. 687.