No. 2231

Second Circuit Appeal

---

**RAYVILLE STATE BANK v. MANGHAM STATE BANK ET AL.**

---

(May 9, 1925, Opinion and Decree.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Corporations—Par. 68.**

The general rule is that a party entitled to a transfer of stock may maintain an action for damages against the corporation where it improperly refuses to register the transfer upon the books of the corporation.

2. **Louisiana Digest—Corporations—Par. 68.**

Under Act 180 of 1904, one who is a bona fide purchaser or pledgee of stock in a corporation in which the corporation improperly refused to register the transfer can collect damages occasioned thereby.

3. **Louisiana Digest—Evidence—Par. 53, 59.**

The plaintiff who claims to be the owner of capital stock of a bank has the burden of proving that it has title to said stock.

4. **Louisiana Digest—Appeal—Par. 625.**

The finding of the lower court that the plaintiff who was suing for damages, caused by the refusal of the bank to transfer its capital stock to it, had failed to prove that it was a "bona fide purchaser or pledgee" of the stock being clearly correct is affirmed.

Appeal from Seventh Judicial District Court of Louisiana, Parish of Richland, Hon. John R. McIntosh, Judge.

This is a suit to recover the value of five shares of capital stock which plaintiff claims the bank refused to transfer to its name. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Tobin R. Hodge, of Rayville, attorney for plaintiff, appellant.

Ellis and Ellis, of Rayville, and T. H. McGregor, of Shreveport, attorneys for defendants, appellees.

ODOM, J. Plaintiff brings this suit to recover of defendant, Mangham State Bank, the sum of $840.00 with 5% per annum interest thereon from judicial demand until paid; the said amount being the alleged value of five shares of the capital stock of Mangham State Bank represented by certificate No. 68.

As a cause of action, plaintiff sets out, in substance, that the said five shares of stock represented by certificate No. 68 were issued by the Mangham State Bank to W. Kline on February 20, 1913, and that on April 9, 1913, said Kline signed, in blank, a power of attorney for the transfer of said stock on the books of the corporation, and that subsequently the said Kline and one A. S. Brown became jointly indebted to the plaintiff bank and that Kline pledged the said certificate of stock as collateral to secure the payment of said indebtedness; that said indebtedness was renewed from time to time, and that at the time of the filing of this suit said Kline and said Brown are indebted to plaintiff bank for a considerable amount represented by a certain promissory note signed by A. S. Brown and endorsed by Kline dated April 16, 1920, and due December 1, 1920, and to which note is attached as collateral security the above referred to bank stock.

The plaintiff alleges that said note provides for the sale of any collateral which may be attached thereto, and that upon the failure of said Kline and Brown to pay the note due it applied to the Mangham State Bank to have five shares of its stock transferred to petitioner for the purpose of giving credit on said note for the value thereof.

And it is further alleged that plaintiff was then informed by the bank officials that the transfer could not be made for the reason that it had previously issued to said W. Kline, the book owner of the five shares of stock represented by certificate No. 68, a new certificate, No. 177, in lieu of certificate No. 68, which latter certificate was represented to have been lost or destroyed and advertised in a local newspaper; and that on December 22, 1922, said certificate No. 177 was transferred to Mrs. Rosa B. Willis who surrendered the same and had issued to herself certificate No. 178.

Petitioner then sets up that the acts of said Kline and Mrs. Rosa B. Willis in representing that certificate No 68 had been lost or destroyed and procuring the issuance of certificate No. 177 lieu thereof were fraudulent and that said certificate No. 68 had been pledged to it and was in its possession for more than five years and that Mrs. Rosa B. Willis knew at the time she acquired said certificate of stock from Kline that the original certificate was not lost or destroyed but was in plaintiff's possession.

Plaintiff further alleges that the Mangham State Bank had knowledge of these fraudulent acts and deeds by and between Kline and Mrs. Willis and knew that the original certificate had not been lost.

Both Kline and Mrs. Willis were made parties to the suit.

The defendant bank answered especially denying any liability to plaintiff and setting up that certificate No. 68 was never held as collateral to the note which plaintiff alleges is due it by Brown and endorsed by Kline but that it was held as collateral to an indebtedness of Kline's which had been paid.

It admitted that it refused to issue a certificate to plaintiff when requested to do so, and it especially alleged that before it issued certificate No. 177 it required the said W. Kline, who was the record owner thereof, and Mrs. Willis, who claimed to hold the same, to advertise the loss of the original certificate No. 68, and that upon the failure of any one to claim the ownership thereof it issued the duplicate.

Defendant asked that Mrs. Willis and the said Kline be called in warranty and made to respond to it in case it should be held that it is due plaintiff any amount. W. Kline answered denying that the bank stock was ever pledged to the plaintiff bank on account of the indebtedness alleged upon but, on the contrary, he alleged that said stock was left in the plaintiff bank merely for safe-keeping and that said stock was never pledged to plaintiff as collateral to the Kline-Brown indebtedness.

He admits that in the summer of 1912 he agreed to sell the stock to Mrs. Willis and being unable to find the certificate he caused the same to be advertised in the name of Mrs. Willis at the direction of the Mangham State Bank and that after the advertisement the bank issued certificate No. 177 which he subsequently transferred to Mrs. Willis.

Mrs. Willis answered alleging especially that she acquired certificate No. 178 in good faith, paying therefor $790.00, but only after the loss of the original certificate No. 68 had been advertised.

Further answering, she reiterates the allegations of Kline's answer as to the pledge of the stock to the plaintiff bank, and she especially alleges that the plaintiff bank was aware of the advertisment of the loss of the certificate of stock, and made no claim to the stock.

The trial of the case in the lower court resulted in a judgment rejecting plaintiff's demand and recognizing Mrs. Willis as the owner of the stock from which judgment plaintiff has appealed.

.OPINION.

A complete history.of this case and the various transactions with reference to. the five , shares ·of the capital stock of the .Mangham State Bank, as between W. Kline, ·the original owner thereof, and the plaintiff, and as between Kline and Mrs. Willis, his transferee of the stock, and as between Kline and the Mangham State Bank and Mrs. Willis and the plaintiff, is fully set forth in the above statement of pleadings.

The suit is to recover of the defendant bank the sum of $840.00, the alleged value of five shares of its capital stock.

Plaintiff is the holder, under a blank endorsement of W. Kline, of certificate No. 68 representing five shares of the capital stock of defendant bank. issued to W. Kline; claiming that said stock had been pledged to it by Kline as collateral for an- indebtedness which he was due it ·and which he failed or refused to pay, plaintiff presented said certificate to the defendant bank in the latter part of 1922 and asked that said bank cancel it and issue in lieu thereof another certificate for a. like number of shares of its capital stock; the bank refused to to this and gave, as its reasons, the following, stated in a letter to Tobin R. Hodge, attorney for the bank, dated May 2, 1923.

"We are unable to accept certificate No. 68 for five shares stock, in favor of W. Kline, and issue to the Rayville State Bank a like number of shares, for the reason ·that this stock was advertised in the Richland Beacon News, as lost, and on 11-29-22 we issued to W. Kline cer. No. 177 for the said shares of stock and he, on Dec. 22, 1922, transferred to the same to Mrs. B. R. Willis, which stock she now holds under certificate No. 178 as of last date named."

It is· plaintiff's contention that it is entitled, to stock and that defendant bank should not have reissued it to Kline, and the said bank being custodian of its shares of stock and being vested with the power 'and it being its duty, to protect the interests of its stockholders must respond to plaintiff in damages on account of the injury which plaintiff suffered by reason of defendant's failure to properly exercise its powers and perform its duties.

It is alleged and proved that defendant bank has issued all the stock it is permitted to issue under its charter. Therefore, if the bank is now under any obligation to plaintiff it must respond by paying the loss sustained, as it cannot now issue stock.

There does not seem to be any dispute as to the law applicable to the case as between the plaintiff and defendant bank.

In the case of Eisenhauer vs. New Orleans Cotton Exchange, 140 La. 574, 73 South. 685, the court quotes approvingly the following from ruling case law:

"The general rule is that a party entitled to a transfer of stock may maintain an action for damages against the corporation where it improperly refuses to register the transfer upon the books of the corporation."

And in Leurey vs, Bank of Baton Rouge, 131 La. 30, 58 South. 1022, the court said:

"A corporation, the capital stock of which is transferable only upon its books, is the custodian of the shares therein, and, being vested with the power and charged with the duty to protect the interests of the owners of such shares, it must repair any injury which they may sustain by reason of its failure properly to exercise such power and discharge such duty."

Act 180 of 1904, page 370, provides:

"That the delivery of a stock certificate of a corporation to a bona fide purchaser or pledgee, for value, together with a written transfer of the same, or a written power of attorney to sell, assign, and transfer the same, signed by the owner of the certificate, shall be sufficient delivery to transfer the title as against all parties; but no such transfer shall affect the right of the corporation to pay any dividend due upon the stock, or to treat the holder

of record as the holder in fact until such transfer is recorded upon the books of the corporation, or a new certificate is issued to the person to whom it has been transferred."

The plaintiff bank was in possession of certificate No. 68 for five shares of the capital stock of defendant bank issued to W. Kline, endorsed on which was a written transfer in blank and a written power of attorney to sell, assign or transfer the same signed by said W. Kline. This certificate with the transfer and power of attorney was presented by plaintiff to the defendant bank with the request that the stock be transferred to it, which request was refused. Therefore if the plaintiff is a "bona fide purchaser or pledgee" of the stock and if the defendant bank improperly refused to register this transfer it must of course respond to plaintiff in damages.

The case, therefore, resolves itself into one of fact as to whether plaintiff is or was a bona fide purchaser or pledgee of the stock and whether the defendant bank improperly refused to register the transfer in plaintiff's favor.

The burden was, of course, on plaintiff to establish its title to the stock. According to our view of the testimony, taken as a whole, it has failed to discharge that burden.

Mrs. M. T. Brand was called as a witness for plaintiff. She testified that she was connected with the plaintiff bank from about February 1, 1917, to December, 1923, and that she had occupied various positions therein, among others that of cashier for about three years. She says that in her capacity of cashier she handled all the securities belonging to the bank. She was handed a note signed by A. S. Brown and endorsed by W. Kline which she recognized as the property of the bank and was asked if Certificate No. 68 of the Mangham State Bank was attached as collateral thereto

and she said "To the best of my knowledge".

She makes it plain that she has no knowledge of any transaction whereby Kline pledged the stock as collateral. When she went into the bank in 1917 she says there was in the bank a note of Kline and Brown and she was asked:

"Now then, so far as your personal knowledge goes, you cannot swear that Mr. Kline ever authorized the pledge of certificate 68 as collateral to note 162."

(Which note 162 is signed by A. S. Brown and endorsed by W. Kline and represents the indebtedness of Kline to the bank) and she answered:

"I just know it is listed on the notes as collateral pledged over his signature."

Referring to the note offered in evidence, we find one dated May 1, 1918, for $5,722.15 signed by W. Kline and A. S. Brown made payable to plaintiff bank. Endorsed on the face of this note in the handwriting of the then cashier we find the following with lead pencil:

"25 Bls. cotton.
2000.00 deposit.
5 shares Mangham.
State Bank stock."

None of the witnesses for plaintiff know when endorsement or memorandum was made or whether Kline authorized it. But Kline states positively that he did not authorize it and that it was placed thereon after he signed the note. But it is stamped "Paid" with the bank's stamp in May, 1920. The other note is attached to plaintiff's petition and is dated April 16, 1920, due December 1, 1920, for $4,175.57. Hodge says this is a renewal note, given to take up the old note above referred to; but it must be noted that this latter note does not appear to evidence an obligation of Kline's for it is signed by A. S. Brown

and endorsed on the bank by W. Kline. This is the only live note, so far as the record discloses, held by the plaintiff bank for which Kline is in any way responsible, and on its face it does not evidence an obligation of Kline's.

We are unable to understand how this note can be a renewal of the old note for, as said, the old note on its face evidenced a solidary obligation of Kline and Brown to the bank whereas the new note evidences Brown's obligation to the bank endorsed by Kline.

Even if it be conceded that the bank stock was pledged as collateral to the first note, when that note was paid and a new note which shows on its face that only Brown and not Kline is the obligor, the collateral was released and could not be held as security for the new note without an agreement to that effect by Kline.

It is a significant fact that there is no notation on this note that the bank stock is pledged as collateral thereto like the notation which was found on the old note dated in 1918 and stamped paid by the bank.

As stated, this new note is dated April 16, 1920. At that time Mr. Hodge was a director in the bank and a member of the discount board, and says he was familiar with all the securities in the bank, but he does not swear that Kline ever agreed that the bank stock be held in pledge as collateral security for the payment of this note.

Mr. Hodge says that he went into the bank as a director and member of the discount board in 1917 and that he found the stock attached to the Kline and Brown note. He does not know how it became so attached. He was connected with the bank as a member of the board in 1920 when the new note was taken but he does not explain how the bank stock became attached to this new note as collateral.

We have carefully read all the testimony introduced by plaintiff and we fail to find it anywhere asserted that Kline ever agreed that this bank stock be pledged for any obligation to the plaintiff bank except a possible overdraft by him. Hodge says that he found the stock attached to the Kline-Brown obligation but he does not know that Kline authorized the pledge. Mrs. Brand has no knowledge of any such agreement. On the other hand, Kline swears unequivocally that he did not pledge the stock except to secure an overdraft and that he paid this obligation to the bank and that Mr. Smith, who was then with the bank, handed him the certificate of stock which he says he then in turn handed to Mr. Etzel, the then cashier, and instructed him to place the same in his private box in the bank with his other papers, and he says he saw Etzel place it in the box. He testifies that that is the last time he saw the certificate and that he at no time authorized any one to remove it from the box. His testimony on this point is strongly corroborated by that of Mr. G. L. Compton, former president of the plaintiff bank.

Mr. Compton says that Kline placed the stock in the bank to secure any overdraft which he might make; and he says that he personally had that understanding with Kline which was concurred in by Mr. Smith, the attorney for the bank.

Mr. Compton left the bank in February, 1917, and he says the stock may have been left with Mr. Etzel, the cashier, as collateral to Kline's cotton account. He is not positive about that, although he leaves the impression that he thinks that is true.

Etzel's testimony was not taken.

Mr. Hodge says that he found the

stock attached to Kline's note when he went into the bank in 1917 and that in March, 1921, it was attached to another note and held by the bank as collateral. Mrs. Brand says it was considered collateral to the Kline note. But the fact remains that neither witness is able to swear that Kline at any time agreed to the pledge.

In view of this fact and considering the positive testimony of Kline, that he did not make a pledge of the stock except to secure an overdraft, and considering the testimony of Mr. Compton which corroborates that of Kline, we hold that plaintiff has not a pledge of the stock and is not entitled to have the defendant bank cancel it on its books and issue new stock therefor.

From the standpoint of the Mangham State Bank and Mrs. Willis, we think they both acted in entire good faith. Mrs. Willis bought the stock from Kline and paid a sound price for it. She applied to the bank through her son to have the stock transferred to her. She was then advised that the original certificate would have to be produced or its loss accounted for. She consulted counsel and was advised to advertise the loss of the stock. The advertisement was inserted in the Richland Beacon News, a weekly newspaper published in Rayville where the plaintiff bank is located, the advertisement appearing in six issues of that paper. This was in August and September, 1922. No one appealed and claimed the stock. There was nothing secret about her dealing with Kline or the defendant bank. We think the transaction between Kline and Mrs. Willis and between Mrs. Willis and the defendant bank are all free from taint. Mrs. Willis presented to the bank a written order from Kline to transfer the stock from him to her. But the bank refused to do this for the reason that she did not present and surrender the original certificate and was advised to advertise the loss of the stock. It was only after the loss of the stock had been duly advertised that the bank issued the new stock to Mrs. Willis. The bank had no knowledge that any one other than Mrs. Willis made claim to the stock until after it had issued a new certificate to Mrs. Willis.

"Where a corporation acts in good faith and without negligence in allowing a transfer by one who appears to be the absolute owner of shares, it is not liable to one having a mere equitable title by virtue of a prior unregistered transfer or otherwise of which it had no notice."

Leurey vs. Bank of Baton Rouge, 131, La. 30, (39), 58 South. 1022.

The lower court rejected plaintiff's demand and recognized Mrs. Rosa B. Willis as owner of the stock in question. We see no error in the judgment and it is therefore affirmed.