(36 South. 488.)

No. 15,082.

STATE ex rel. CANAL BANK v. NORTH
AMERICAN LAND & TIMBER
CO., Limited.*

(March 28, 1904.)

PLEDGE—RIGHTS OF PLEDGEE—TRANSFER OF
STOCK—MANDAMUS.

1. Where an act of pledge, whereby, in the event of the failure of the pledgor to pay at maturity the debt to secure which the pledge is given, or in the event of his failure to furnish additional security when required, the pledgee is authorized to sell the pledged property, consisting of stock in a corporation, and to become the owner thereof by purchase, is made the basis of a continuing credit, which is used for the purposes of successive debts, varying in amounts, the pledgee, who admits that he is not the owner, and neither alleges nor proves an existing or past-due debt or other consideration, which, under his contract, would entitle him to become the owner of the pledged stock, cannot make himself the owner thereof in a manner and under conditions not contemplated by such contract, and has no standing for the purposes of a suit to compel its transfer to him on the books of the corporation and the issuance of new certificates.

2. Where a litigant, alleging that he is the pledgee of stock in a corporation, brings suit in that capacity, to compel the corporation to transfer such stock and issue new certificates to him, and the corporation sets up the defense that the pledgor, as one of its members, is without right to transfer his stock in disregard of its charter and of its rights thereunder, and it is found that the pledgee has no standing in his own right to demand the judgment prayed for, a possible inference, arising from testimony given by him that the pledgor may be willing or anxious that it should be done, affords no sufficient reason for the rendition of such judgment, or for an inquiry into the merits of the controversy between the pledgor and the corporation.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Denis Miller, Judge.

Application by the state, on the relation of the Canal Bank, for a writ of mandamus to the North American Land & Timber Company, Limited. Judgment for defendant, and relator appeals. Affirmed.

---

*Rehearing denied April 25, 1904.

Cline & Cline and Branch K. Miller, for appellant. Denègre, Blair & Denègre and Pujo & Moss, for appellee.

Statement of the Case.

MONROE, J. Relator, as the holder, asserting ownership, of original certificates issued to J. B. Watkins for 12,082 shares of the capital stock of the North American Land & Timber Company, Limited, brought this suit against the company at Lake Charles, in the parish of Calcasieu, alleging tender of the certificates so held, and demand upon and refusal by it to issue in place thereof certificates in its (relator's) name, and praying for a writ of mandamus "directed to the said North American Land & Timber Company, Limited," commanding it to issue to relator certificates for 12,082 shares of its capital stock "upon surrender of the aforesaid * * * original certificates, * * * and to make entry thereof on its stock books" at its office in Lake Charles.

Upon respondent's prayer for oyer the relator was ordered to produce "the original instrument of transfer * * * by and through which it claims to have acquired the ownership of said stock from J. B. Watkins," and in compliance therewith it produced a written instrument dated May 31, 1903, whereby J. B. Watkins pledged to it certain notes and certificates of stock, including those here in question, to secure the payment of any debt then existing or thereafter to be incurred by him to the extent of $50,000, and authorized it to sell the collateral so pledged at public or private sale, without recourse to judicial proceedings, and without notice, in the event of his failure to pay such debt at maturity or to furnish additional security when required, and to become the purchaser thereof, without right of redemption on his part; and it also produced the original certificates of stock issued to J. B. Watkins, and reading, so far as need

be quoted: "This is to certify that Jabez Bunting Watkins, of Lawrence, Kansas, U. S. A., is the registered proprietor of * * * shares of £1, each (fully paid), numbered as per margin, in the North American Land & Timber Company, Limited, subject to the memorandum and articles of association and the regulations of the company."

The defendant then, by way of exception and answer, pleaded and alleged in substance: (1) That the petition discloses no cause of action. (2) That the questions presented ought not to be tried on an application for mandamus. (3) That respondent is a British corporation, having its principal domicile in England, and that J. B. Watkins was one of the original corporators, and is bound by the memorandum of association and articles of association, which were signed by him. (4) That by the terms of said memorandum and articles of association shares in the company are to be transferred upon the conditions and in the manner prescribed by their regulations, agreeably to which the company has a paramount lien upon the stock of its members for all debts due to or with the company. Its directors are authorized to refuse their sanction to the transfer of any shares upon which such lien rests, or to any transferee of whom they do not approve; and the shares are to be transferred by instruments under seal, executed by both transferror and transferee, and delivered to the company with such evidence as the directors may require to prove the title of the transferror and his right to make the transfer. That such regulations have been sustained by the uniform jurisprudence of the English courts, and that they have not been complied with in the instant case, in that relator's transferror was indebted to respondent at the date of the alleged transfer of his stock in the sum of $148,566.12, with interest, for which suit was pending, and no opportunity was afforded respondent's di-

rectors to approve or disapprove of the transfer, the transferee, or the instrument by which the transfer is alleged to have been effected.

Further answering, respondent alleges that, by the law of England an ad valorem tax is required to be paid upon transfers of stock, and, in order to comply therewith, the alleged act of transfer to the relator should have stated the consideration, and should have had attached the revenue stamp required by law; and respondent denies that relator is the bona fide owner and transferee of the stock in question, and alleges that this suit is brought for the purpose of assisting said Watkins in putting his property beyond respondent's reach, and beyond the reach of the judgment which it expects to obtain against him in said pending litigation.

Upon the trial the counsel for relator, after offering the certificates of stock, which have been produced in response to the prayer for oyer, offered a certain "Document A," reading as follows:

"Irrevocable power of attorney for transfer of stock: Know all mean by these presents, that I, the undersigned, hereby sell, assign and transfer to the Canal Bank, for value received, twelve thousand and eighty two (12,082) shares of the capital stock of the North American Land & Timber Company, Limited, standing in the name of the undersigned on the books of said institution, as per following certificates, viz: Nos. 249, 250, 251, 252, 253, 254, and hereby irrevocably appoint and authorize the President or Cashier of said Bank to make for, and in the stead of, the undersigned, the necessary transfer of said stock on the books of said institution, with power, also, to appoint a substitute or substitutes therefor with like full power, hereby ratifying and confirming all that shall be lawfully done under the authorization herein granted. Signed, seal-

ed and given at Lawrence, Kansas, this first day of December A. D. 1899.

"[Signed]                 J. B. Watkins.
"Witnesses present
"[Signed]                 Wilbur F. Presby.
"[Signed]                 Carl S. Rarick."

This document was "offered to prove authority to transfer stock pledged, and not to prove the sale of stock," and was admitted over the objection that it purports to be a sale of stock, and that relator, when called on so to do, had produced, as its muniment of title, an act of pledge dated May 31, 1901. The relator then offered the act of pledge of May 31, 1901, and thereafter J. B. Watkins, called as a witness on its behalf, was permitted to testify, also over objection duly made, that there had been a previous pledge, and that the "Document A" had been given to enable the bank to carry its stipulations into effect. The witness also testified that "he has had notes in the Canal Bank continuously for the last seven years, and this stock pledged"; that "the amount of money differed at times"; that "the stock was increased to the present amount" probably in 1895. He further testified that none of the other securities included in the pledge have been disposed of or applied to the extinguishment of the obligation to secure which the pledge was given; that since May 31, 1901, he has had no agreement with the bank concerning the stock herein in controversy; and that in the summer of 1902 he went to England, upon the invitation of the officers of the respondent company, to discuss and attend a meeting of the shareholders which was to be called to consider the differences between him and the company, and whilst there was served with process in the suit referred to in the answer, but was afforded no opportunity for the discussion to which he was invited. Upon the other hand, we find in the record no positive statement from the witness, or from any one else, that he owed the relator anything at the time this proceeding was instituted, or as to any specific amount that he may have owed at any previous time.

On behalf of the respondent there was offered in evidence its memorandum and articles of association, together with copies of the pleadings in the suit filed by it against J. B. Watkins, which sustain the averments of the answer as to their provisions and purport; and there was also offered the testimony of a member of the English bar to the effect that under the law and jurisprudence of England a member of a corporation such as the respondent, and those who deal with him, are bound in the matter of the transfer of stock by the conditions imposed by the memorandum and articles of association. It was further shown that the respondent's memorandum and articles of association were recorded in the office of the Secretary of State of Louisiana in August, 1903, after the institution of this suit; that the certificates here exhibited were tendered to the respondent's agent at Lake Charles; that a demand was made upon him to transfer the stock to the relator, which demand was refused. Whether the pledge or any other muniment of title was exhibited with the certificates of stock does not appear. The judge a quo rejected its demand, and the relator has appealed.

### Opinion.

The petition alleges "that relator is the sole owner" of the stock in question. When, therefore, in response to the demand for oyer of its title, it exhibited an act of pledge, the case might very well have ended. Upon the trial, however, there was no objection to the offer in evidence of the pledge, and the only objection made to the offer of the "Document A" was that it purported to be a sale, whereas the sole purpose for which it was offered was "to prove authority to transfer stock pledged," and the counsel for the relator disclaimed the intention of attempting to prove a sale. As the matter now stands,

therefore, the relator is in the attitude of, and has no greater rights than, a pledgee, who, whilst relying upon an act of pledge, which authorizes it to become the owner of the pledged stock upon the failure of the pledgor to pay at maturity the debt for which the pledge was given, admits that it is not the owner, and does not allege or prove the existence of any debt in default of the payment of which it might now or at some future time become the owner. It may be said that the act of pledge, considered in connection with the fact that the relator is in possession of the securities therein mentioned, presupposes a debt; but whilst, ordinarily, that might be true, it is not necessarily so in this case, since by its terms the act relied on by the relator was executed not merely to secure a specific debt presently contracted, but to secure any debt which the pledgor might then owe or might thereafter contract. In other words, it was intended as the basis of a continuing credit, which has been used in the past for the purposes of successive debts varying in amounts, but which is not shown with any certainty to have been in actual use when this suit was begun. If we assume that it was in use at that time, and that the pledge then stood to secure an actual existing loan, there is still nothing to show the amount of such loan, or that it had matured, or that there had been otherwise any default by reason of which, according to the terms of its contract, the pledgee could have become the owner of the pledged property; and, as the pledgee has no other rights than such as are secured by the contract under which it holds that property, we are at a loss to understand how it can make itself the owner of the property in a manner not contemplated by that contract. We have not lost sight of the fact that the pledgor, called as a witness, has testified on behalf of the relator, or of the possible inference thereby suggested that he is not unwilling that judgment should be rendered as prayed for; but the court was open to him to appear in his own behalf, or to join the relator as a party to the record, and he has not chosen to do either. Under these circumstances, and as the relator has failed to show in itself any right to the judgment prayed for, we do not consider the possible inference that the pledgor may be willing, or perhaps anxious, that it should be done, a sufficient reason either for rendering such judgment or for going into the merits of the controversy between the pledgor and the corporation of which he is a member.

The judgment appealed from is therefore affirmed.

The Chief Justice, being absent on account of illness, takes no part.