**(119 So. 697)**

No. 29553.

### CHAPPUIS v. SPENCER et al.

Nov. 26, 1928. Rehearing Denied Jan. 2, 1929.

Abner C. Chappuis, of Rayne, and Delvaille H. Theard, of New Orleans, for appellant.

Lemle, Moreno & Lemle and Thomas E. Furlow, all of New Orleans, for appellees.

THOMPSON, J. This is an application for a mandamus directed primarily to the Shell

Beach Properties, Inc., a corporation having its domicile in this city.

The object is to compel the corporation to issue to the plaintiff a new certificate representing shares of stock in said corporation in place of another certificate which plaintiff holds under a power of attorney.

In the petition it is alleged that plaintiff has title to the original certificates derived from Spencer under an irrevocable power of attorney, and that he is entitled to exercise all rights of ownership in respect to said shares of stock.

The corporation filed an exception of no cause of action, followed by an answer in which it is alleged that it had been advised that the said Chappuis was not the owner of said stock but that the stock was actually owned by its codefendant; that should respondent transfer said stock to the said Chappuis before there had been a judicial determination of the ownership thereof, respondent would become liable to the true owner for the value of the said stock.

The owner of the stock as appears upon the corporation books was impleaded as a codefendant, and answered that he delivered to E. L. Chappuis, as pledgee, certain stock certificates owned by him and which was to be held by said Chappuis as pledgee; that respondent executed an assignment of said stock certificate to the said Chappuis, with the understanding that the same would at all times remain that of respondent and that said assignment was executed solely to enable the said Chappuis to have the stock transferred to him or any purchaser thereof if and when respondent had defaulted on his obligation to pay the said Chappuis or the holder of the note of respondent.

The exception filed by the corporation was sustained, and the demand of plaintiff was rejected.

It was conceded in the lower court and admitted in this court that the plaintiff is only pledgee of stock, and it further appears as a fact that the debt for which the stock was given in pledge was not due at the time the present proceeding was filed.

We copy in full the power of attorney which the plaintiff holds in connection with the certificate pledged as collateral security to the debt of defendant Spencer.

"Irrevocable Power of Attorney for Transfer of Stock.

"Know all men by these presents that J. W. Spencer the undersigned hereby sell, assign and transfer to E. L. Chappuis for value received one thousand shares of the capital stock of Shell Beach Properties, Inc. standing in the name of the undersigned J. W. Spencer on the books of said corporation as per following certificate, viz:

"No. 118 dated August 27, 1927 for 600 shares.

"No. 410 dated December 28, 1927 for 100 shares.

"No. 414 dated May 14, 1928 for 300 shares, total 1000 shares, and hereby irrevocably appoint and authorize E. L. Chappuis to make, for and in the name and stead of the undersigned, the necessary transfer of said stock on the books of said institution, with power also to appoint and authorize one or more persons as a substitute or substitutes therefor, with like full power, hereby ratifying and confirming all that shall be lawfully done under the authorization herein granted."

It is contended that under this power of attorney and in view of the provisions of Act 180 of 1910 known as the Uniform Stock Transfer Law and Act 215 of 1912, that, notwithstanding the plaintiff only holds the stock in pledge, he is to all intents and purposes the legal owner of the shares of stock represented by the certificate and has the absolute right to have said certificate canceled on the books of the corporation and a new certificate issued to him as owner in order

that he may the more effectually exercise all of such rights as owner.

Counsel cite and quote from numerous decisions of the courts of other states which hold that a pledgee or holder of stock properly indorsed may compel registration on the books of the corporation by action in the courts when corporation refuses to make such transfer.

The great weight of authority outside of Louisiana seems to sustain that proposition.

We have not had the opportunity and have not the inclination to examine the decisions of other states, but we assume that they were properly decided under the laws of those states and under the peculiar facts of each case.

We agree with counsel that the purpose of the uniform stock transfer statute was to make the certificate negotiable and to place such certificate on a parity with other negotiable instruments.

There can be no sort of doubt that under that statute a person purchasing or acquiring otherwise, in good faith from a holder under a proper indorsement, a certificate representing shares in a corporation obtains a valid and legal title good against the world, even though the person delivering and transferring the stock was a mere pledgee.

The statute expressly provides that "to purchase includes to take as mortgagee or pledgee. Purchaser includes mortgagee and pledgee."

If we were here dealing with a person who had acquired from the plaintiff as pledgee, we would unquestionably hold that such purchaser had a good title and was protected under the statute against any claims or latent and concealed equities that might exist in favor of the original owner of the stock certificate.

But the plaintiff is not a third holder; he is not the owner at all, but a mere pledgee without power to sell the pledged stock before

the maturity of the debt for which he holds the stock in pledge.

As such pledgee and as against the pledgor the plaintiff is not in position to take advantage of the provisions of a statute clearly intended for the benefit and protection of third persons dealing on the faith of the indorsement and representations of the holder.

It is our opinion that it was never intended that as against the true owner, the holder of a stock certificate under a contract of pledge should have and enjoy all of the rights of ownership conferred by the statute on a purchaser, before the maturity of the debt for which the stock was given in pledge.

The statute in question did not repeal articles 3165 and 3166 of Revised Civil Code, and conferred on the plaintiff as pledgee no greater rights as against the owner of the stock than existed prior to such special legislation. As between the pledgor and the pledgee, no legislation was necessary. Their respective rights were regulated and amply protected before the adoption of the Uniform Stock Transfer Law.

As before stated, the plaintiff, under his irrevocable power of attorney, coming into possession of the stock certificates solely as pledgee, has no authority to dispose of the stock except as clearly contemplated by the contract of pledge on the maturity of the primary obligation, and any attempt to do so would be a violation of the trust and a betrayal of the confidence reposed in him by his debtor.

What he cannot do under the statute he cannot be authorized to do by the courts.

There are only two cases in Louisiana having any pertinent bearing on the precise question here presented. The latest is that of Eisenhauer v. N. O. Cotton Exchange, 140 La. 574, 73 So. 685. That was a suit by the holder of a stock certificate under a power of attorney similar to the one under which plaintiff holds. The plaintiff in that case, as here.

held the stock in pledge to secure whatever balance might be found due him on a final settlement of accounts with the pledgor.

The parties were partners in a commercial enterprise. About eight months after the dissolution of the firm the plaintiff cast up the accounts and found that his partner owed him something over $12,000. He applied to the Cotton Exchange to have the stock transferred to him, but the demand was refused. A litigation between the partners followed, and finally resulted in a judgment in plaintiff's favor for an amount slightly less than originally demanded.

After this judgment the Exchange made the transfer of the stock on its books.

It appears that the stock had a rental value, and that it had greatly depreciated in value at the time the transfer was made.

The plaintiff brought suit for the difference in value and also for what the stock could have rented for. The court rejected the demand for depreciation in value on the ground that the property continued to be the property of the pledgor and that the pledgee had no right to sell the property; hence any loss in value fell on the owner and did not inure to the benefit of the pledgee. The claim for rental was allowed against the Exchange on the ground that the pledgee as such while not having the right to sell the stock did have the right to lease it and was entitled to collect the price of the lease. The court did hold, however, that under Act 180 of 1904 it was the duty of the corporation to make the transfer and thereafter treat the pledgee as the owner.

We are unable to appreciate the reasoning of the court in so holding.

The court also held that the plaintiff as pledgee was not authorized to sell the stock, citing Civil Code, 3165 and 3166, and observed that he could certainly not do so until the debt secured by the pledge had been established or became a fixed indebtedness.

It seems to us a strange anomaly to hold

that a mere pledgee of stock cannot sell it and yet at the same time, hold that he can force the corporation to transfer the ownership to the pledgee on the books and thereafter to treat such pledgee as owner. Thus investing in the pledgee the power to sell which the court had just asserted he did not possess.

The decision is without precedent in this state, and, standing alone in our jurisprudence, we are not disposed to follow it.

The other case is State ex rel. Canal Bank v. North American Land & Timber Co., 112 La. 442, 36 So. 488.

In that case J. B. Watkins owned certain shares of the capital stock of the defendant land company.

He executed a written act of pledge of the certificates to the Canal Bank to secure the payment of any debt then existing or thereafter to be incurred by him to the extent of $50,000, and authorized the bank to sell the collateral so pledged at public or private sale in the event of his failure to pay such debt at maturity or to furnish additional security when required. Watkins also executed in favor of the said bank an irrevocable power of attorney as full and complete as the one here involved transferring the stock to the bank and authorizing the transfer to be made on the books of the company.

The Canal Bank instituted suit against the timber company to compel it to issue to the bank new certificates in lieu of the ones the bank held in pledge under the power of attorney. It was alleged that the bank was the owner and holder of the original certificates.

It developed on the trial that while the bank held the irrevocable power of attorney, it likewise held a written pledge of the stock certificates.

This court in the very beginning of its opinion said:

"The petition alleges that relator is the sole owner of the stock in question. When therefore, in response to the demand for oyer of

its title, it exhibited an act of pledge, the case might very well have ended."

This language is equally appropriate in this case. The plaintiff sued to have the stock transferred to him as owner, but on the trial admitted that he held the stock as pledgee and not as owner; hence that should have ended the case in the rejection of plaintiff's demand, as was the ultimate result in the cited case.

It may be further observed that in the cited case the bank, while asserting ownership in its petition, on the trial of the case disclaimed ownership and offered the power of attorney to prove only the authority to transfer the stock pledged. The court in commenting on this fact stated that the relator was in the attitude of, and has no greater rights than, a pledgee who, whilst relying upon an act of pledge, which authorizes it to become the owner of the pledgee stock upon the failure of the pledgor to pay at maturity the debt for which the pledge was given, admits that it is not the owner and does not allege or prove the existence of any debt in default of the payment of which it might now or at some future time become the owner.

The counsel for plaintiff, on page 34 of their supplemental brief, concede that the court was compelled to refuse the demand of the Canal Bank to be recognized as the owner because it was merely a pledgee with no assignment or power of transfer in its favor. Counsel are in error, however, when they say that the Canal Bank held no assignment or power of transfer in its favor.

If counsel will refer to the case as reported on page 444, they will find the irrevocable power of attorney to the Canal Bank copied in full, and, as we have already stated, is as full and complete assignment and authorization to make the transfer on the books as that of the plaintiff herein.

Our conclusion is that the power of attorney did not confer on the plaintiff full ownership of the shares of stock in question and did not authorize him to cause a transfer to be made to him on the books of the defendant corporation before the maturity of the debt for which the stock certificate was pledged. In thus holding it must be understood that we do not abridge, restrict, or in any manner limit the provisions of the uniform transfer statute in so far as such provisions apply to third persons who acquire under proper indorsement and delivery from the holder and apparent owner, and in so far as they apply to persons who may purchase directly from the original holder and registered owner by indorsement and delivery.

We merely hold that a pledgee, even though he is in possession of an irrevocable power of attorney, has no right of ownership conferred upon him, and has not the legal right to have the stock transferred to him unless and until the maturity of his debt for which the stock is given in pledge.

For the reasons assigned, the judgment appealed from is affirmed.