239 So.2d 339

Frank J. D'AMICO

v.

Joseph C. CANIZARO.

No. 50195.

June 29, 1970.

Rehearing Denied Oct. 7, 1970.

Graham, Graham & Kiefer, Louis B. Graham, Sehrt, Boyle, Wheeler & Butler, Peter J. Butler, New Orleans, for defendant-relator.

George H. Jones, Frank J. D'Amico, New Orleans, for plaintiff-respondent.

HAMLIN, Justice:

In the exercise of our supervisory jurisdiction we directed Certiorari to the Court of Appeal for review of its judgment which affirmed the judgment of the trial court in favor of the plaintiff, who brought suit on a $40,000.00 promissory note, and against the defendant in the full sum of $40,000.00, together with 8% interest per annum from October 9, 1966, until paid, plus costs and 10% attorney fees. The judgment also dismissed the reconventional demand filed by defendant. 254 La. 1099, 229 So.2d 112; La.App., 226 So.2d 547; Art. VII, Sec. 11, La.Const. of 1921.

1. The note, dated August 9, 1966 was payable to "Bearer" on or before sixty days from date; interest was recited as 8% per annum from maturity until paid. Attorney fees were fixed at 10%. The back of the note contained the following recitation: "This Hand Note is secured by the pledge of the following stock certificates of G. Brian Corporation, being 100% of all of the outstanding shares of said Corporation: (1) Certificate No. 5 for 1.2 shares, (2) Certificate No. 6 for 8.8 shares." Under the recitation, appeared the endorsements of Sam J. Recile, Frank Spalitta, and Joseph C. Canizaro.

Plaintiff offered as Exhibit No. 7, a letter written by Frank Spalitta, Secretary of G. Brian Corporation, "To Whom It May Concern." This letter stated:

The Court of Appeal has correctly stated the facts of this exceptional matter as follows:

"On August 9, 1966, Joseph C. Canizaro contacted Frank J. D'Amico about making a loan to G. Brian Corporation ('GBC'), Sam J. Recile and Frank Spalitta. As a result of that meeting, D'Amico drew a counter check for $35,000.00, dated August 9, 1966, to the order of G. Brian Corporation and received a promissory note, also dated August 9, 1966, in the amount of $40,000.00, executed by G. Brian Corporation, through Sam J. Recile as Chairman of the Board.[1] This note was secured by the pledge of GBC stock in the form of Certificate No. 5 for 1.2 shares owned by Frank Spalitta and Certificate No. 6 for 8.8 shares owned by Sam J. Recile, the two certificates representing 100%

"The G. Brian Corporation has presently outstanding 10 shares of capital stock issued in the following proportions:

"(1) Certificate No. 5 to Frank Spalitta for 1.2 shares

"(2) Certificate No. 6 to Sam J. Recile for 8.8 shares

"This is all of the outstanding capital stock of said corporation; and it is my understanding that this stock is presently being pledged as security behind a said $40,000.00 hand note dated this date.

"As secretary of B. Brian Corporation, this letter is being written to you to advise that no additional stock or reissuances of stock will be made by the G. Brian Corporation until the said $40,000 note mentioned above has been paid in full."

of GBC stock outstanding and was accompanied by 'Assignment Separate from Certificate' forms. The note was thereafter endorsed by Sam J. Recile, Frank Spalitta and Joseph C. Canizaro individually. The note was payable to bearer and due 60 days from date of issuance.

" * * *

"On January 10, 1967, [the note was not paid at maturity despite repeated efforts of D'Amico] the 'Assignment Separate from Certificate' forms were admittedly completed as to name of attorney and date. [Anthony J. Vesich, Jr. was irrevocably constituted and appointed attorney to transfer the stock on the books of G. Brian Corporation, dated January 10, 1967.] The insertion of the assignee's name [Frank J. D'Amico] and the witness' signature [Joseph C. Canizaro] on the same day is a matter of contention.

"After more attempts to collect the note failed and D'Amico determined that a suit to enforce his claim was necessary, he contacted Canizaro and obtained 'a continuing guarantee and endorsement' of the note, which agreement was dated March 29, 1967, and given in consideration for D'Amico not filing suit against Canizaro on the note at that time. [The agreement recited: "This will advise that I, Joseph C. Canizaro, agree that I am endorser on a note dated August 9, 1966, in the amount of FORTY THOUSAND AND NO/100 ($40,000.00) DOLLARS, payable to the order of bearer on or before sixty (60) days from date, with interest at the rate of eight (8%) percent per annum, drawn by G. Brian Corporation and personally endorsed by Sam J. Recile and Frank Spalitta and Joseph C. Canizaro. That said note is past due and due demand has been made upon me and the other parties. It is now apparent that a suit must be entered on the note, and in consideration for the holder of said note not filing suit against me to enforce the obligation at this time, I hereby agree to a continuing guarantee and endorsement on said note, and that I will be personally responsible for the payment of same. I agree to waive any rights which I may have to assert a release if suit is filed against the makers and not against me."] In April, 1967, D'Amico filed suit on the note against GBC, Recile and Spalitta and obtained a judgment against them in May, 1967. In June, 1967, Recile filed for bankruptcy and an unsuccessful attempt was made to reorganize GBC. Being unable to satisfy his judgment, D'Amico filed this suit on April 23, 1968, against Canizaro as endorser and guarantor."

As stated supra, judgment of the trial court was in favor of the plaintiff. The Court of Appeal considered two issues:

(1) Did D'Amico become owner of the pledged stock by the insertion of his name as assignee on the stock assignment forms attached to the stock certificates? (2) Was D'Amico estopped from recovery as creditor-pledgee by his allegations of ownership of the GBC stock in other litigation? Both questions were answered negatively; the judgment of the trial court was affirmed, and writs were taken to this Court by Canizaro. He assigns as errors to the judgment of the Court of Appeal its negative findings on the two issues supra.

Counsel for the defendant submits that D'Amico did acquire title to the stock certificate which was pledged as security for his loan; the assignment which is attached to the certificate speaks for itself, that consequently, the Deficiency Judgment Act must apply, and D'Amico cannot assert any claim for a deficiency against the maker or endorsers of the promissory note. Alternatively, counsel argues that D'Amico is judicially estopped from denying that he is the owner of the stock certificate, as he personally filed a petition of intervention in the Civil District Court for the Parish of Orleans in another matter in which he informed the same court that he was the owner of the certificate, having acquired title on January 10, 1967.

■ Initially, it must be understood that we are herein concerned with a principal obligation—a promissory note. As a rule when a debtor defaults on the payment of the principal obligation, the creditor avails himself of his security device, if he has one,[2] but there is no rule of law which prohibits the creditor from proceeding on the principal debt.

■ We have read the testimony of record and find that plaintiff never intended to accept ownership of the stock in payment of the $40,000.00 promissory note. Despite any action he took, his testimony is affirmative and conclusive that he wanted his money; he did not want to be the owner of the stock. At all times he was willing to return the stock if he were paid the amount of the note.[3]

Defendant is an endorser who has been sued when the maker of the note and other endorsers could not pay a judgment in plaintiff's favor. In consideration of not being sued when the maker and his co-en-

---

2. "Every lawful obligation may be enforced by the auxiliary obligation of pledge." LSA–R.C.C. Art. 3136.

3. The Court of Appeal said: "We have previously determined that the stock ownership has not been transferred to D'Amico, hence there has been no sale and there can be no deficiency. Nor is D'Amico seeking a deficiency judgment under LSA–R.S. 13:4106 and 4108. His present suit is for the total amount of the endorsed note and there has been no impairment of Canizaro's subrogation rights on the pledged stock, as D'Amico has retained the stock as pledgee and can deliver it to Canizaro upon payment. He has not volunarily accepted the stock as payment of the debt thereby discharging the surety." We agree with this statement.

·dorsers were sued, defendant, as stated supra, entered into a witnessed agreement whereby he admitted his endorsement of the $40,000.00 promissory note, that the note was past due, that demand had been made, that suit must be entered on the note, and that he agreed to a continuing guarantee, being responsible for the payment of the note. We conclude that defendant is bound by the agreement into which he entered. He acknowledged the principal obligation; for reasons set forth hereinafter, he cannot now contend that the GBC stock satisfied his obligation.

"Pledge, the subject of Title XX of the Louisiana Civil Code of 1870, is 'a contract by which one debtor gives something to his creditor as a security for his debt' (LCC 3133). The pledge is one of the oldest of security devices. * * *" Slovenko,

Ralph, *Of Pledge*, 33 Tul.L.Rev., p. 59. It is a contractual obligation and can be availed of on any kind of debt. It is of an accessory nature and depends on a valid principal obligation. There are two kinds of pledge, namely, the pawn and the antichresis. LSA–R.C.C. Art. 3134. "It is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it already by some other right." LSA–R.C.C. Art. 3152. There are formalities connected with the contract of pledge in certain specified instances; in other instances, delivery is sufficient, and the obligor need not be notified of the pledge.[4]

■ Article 3165 of the Revised Civil Code[5] provides for the procedure to be

---

4. LSA–R.C.C. Art. 3158, provides in part: "When a debtor wishes to pledge promissory notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or written obligations of any kind, he shall deliver to the creditor the notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or other written obligations, so pledged, and such pledge so made, except as hereinafter provided with regard to life insurance policies, shall without further formalities be valid as well against third persons as against the pledger thereof, if made in good faith, provided that where the pledge of instruments not negotiable, the debtor must be notified thereof, it being understood that no notification is required in the case of the pledge of certificates of corporation stock. All pledges may be made by private writing of any kind if only the intention to pledge be shown in writing, but all pledges, except of a life insurance policy in favor of the insurer, must be accompanied by actual delivery. * * *" See, Slovenko, Ralph, *Of Pledge*, p. 109.

5. "The creditor cannot, in case of failure of payment, dispose of the pledge; but when there have been pledge of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights,

taken by the creditor when his debtor defaults. At the present time, we do not find that its provisions have been so extended as to permit a creditor to appropriate to himself the debtor's pledge. The jurisprudence and law review treatises indicate that such would be incompatible with the pledgee's fiduciary character. See, Elmer v. Elmer, La.App., 203 So.2d 391; State ex rel. Canal Bank v. North American Land & Timber Co., Limited, 112 La. 441, 36 So. 488; Alcolea v. Smith, 150 La. 482, 90 So. 769; 27 Tul.L.Rev., p. 490; Slovenko, Ralph, *Of Pledge*, 33 Tul.L.Rev., pp. 114–118; 41 Tul.L.Rev., pp. 803–804; 29 La.L.Rev., p. 226. The fact that a debt matures before an appropriation does not affect this finding. Cf. Chappuis v. Spencer, 167 La. 527, 119 So. 697.

"The act of transfer and power of attorney, delivered with stock certificates which are pledged to secure the payment of a note, are to be construed with reference to the entire transaction, including the recitals on the face and back of the note, and, so construed, are the ordinary incidents of the contract of pledge, and do not evidence a present sale of the stock." Citizens' Bank of Louisiana v. Folse, 123 La. 918, 49 So. 641. Considering all of the exceptional facts and circumstances of

plaintiff's negotiations with defendant, the maker of the note, and the other endorsers, we find, as did the Court of Appeal, that the two "Assignment Separate From Certificate" were merely incidental to the pledge agreement. In the instant matter, they did not evidence a transfer of ownership.

■ The Uniform Stock Transfer Act, LSA–R.S. 12:621 et seq., is not applicable to this case. We are not concerned with the transfer of stock from one party to another under facts different from those herein involved. This matter is decided under the law of "Pledge" because, as stated supra, the facts disclose that "Pledge" and not stock transfer was intended by the parties.

■ We find no reason for a lengthy discussion of defendant's alternative contention—"Estoppel." In his intervention filed in the case of Stanley v. Barbara Courtney, Wife of Sam J. Recile, No. 455–590 of the Docket of the Civil District Court for the Parish of Orleans, D'Amico, the plaintiff herein, did allege his ownership of Certificate No. 6 of G. Brian Corporation for 8.8 shares of G. Brian Corporation; but, from the instant evidence we find that the allegation was made by

---

or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties

without the intervention of courts of justice; *provided*, that all existing pledges shall remain in force and be subject to the provisions of this act." LSA–R.C.C. Art. 3165.

D'Amico to protect his security and not to assert ownership. The allegation was not a judicial admission. LSA–R.C.C. Art. 2291. We agree with the finding and reasoning of the Court of Appeal that D'Amico was not estopped from pursuing his claim herein. See, D'Amico v. Canizaro, La.App., 226 So.2d 247, at pp. 550–552.

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is affirmed. All costs of this Court are to be borne by defendant.