LEMMON, Judge.
Defendants have appealed from a partial summary judgment which declared invalid a contract they had executed with plaintiff and prohibited them from acting as trustees under the contract.[1] The issue on appeal is the validity of the contract.
I
Prior to the execution of the contract at issue, plaintiff was the owner of 50% of the shares of stock in Pascal-Manale, Inc., and defendants Garon and Carimi were the attorney and accountant respectively for the corporation. Plaintiff had contracted to purchase the other 50% of the stock from her sister for the price of $450,000.00, but had difficulty obtaining financing. *677 Through defendants’ efforts a bank agreed to lend plaintiff $600,000.00 (which included the pay-out of an existing $150,000.00 loan), but required the pledge of the corporate stock and mortgages of other property owned by plaintiff, as well as personal guaranties by defendants and three other persons (intervenors in this suit) and additional security valued in excess of $200,-000.00 to be furnished by defendants and intervenors.
As part of the agreement to guarantee the loan and furnish the necessary security defendants and intervenors required plaintiff to execute two contracts. In the first contract, entitled Joint Venture Agreement, the parties stated that it was in their best interest for the corporation to be managed and directed under a definite and fixed policy in order to properly develop the corporation’s business opportunities and to repay the loan, and they agreed that defendants and intervenors would guarantee the loan and provide the additional security and that plaintiff would pay them $2,000.00 per month during the term of the loan (or a minimum of $120,000.00). Plaintiff further agreed that, in the event of her default on the note, she would assign all of her interest in the corporation to defendants and intervenors upon their demand, subject to plaintiff’s right to reacquire the stock within 60 days by paying all sums expended to remedy the default.
In the second contract, entitled Voting Trust Agreement, plaintiff, as sole shareholder, and defendants, as trustees, reasserted that it was in plaintiff’s best interest for the corporation to be managed and directed during the next ten years under a definite and fixed policy, and for this purpose plaintiff “requested” defendants to hold legal title to the stock in trust for ten years under the contract terms. Defendants were further given the unqualified right to vote the stock as shareholders, free from any interference by plaintiff, but without liability as shareholders, and were also given the following powers:
a)The right to vote for election of directors and in favor of or in opposition to any resolution or proposed action of any character whatsoever which may be presented in any meeting requiring the consent of shareholders of the corporation;
b) The right to set salaries, bonuses, and other compensation for all employees, agents, officers, and directors of the corporation;
c) The right to declare all dividends;
d) The right to hire and fire all personnel employed by the corporation;
e) The right to approve of any and all remodeling, alterations and repairs of any property owned or leased by the corporation;
f) The right to authorize and approve all capital expenditures for any purpose whatsoever; and
g) The right to dispose of the collateral securing the debt of shareholder in any manner deemed appropriate by the trustees and to pledge the stock to secure any corporate loan.
The contract specified a term of ten years, but reserved to the trustees the right to terminate the agreement sooner by unanimous vote.
II
Plaintiff’s motion for partial summary judgment attacked the second contract (Voting Trust Agreement) on two grounds: (1) the contract is invalid as a voting trust agreement, because R.S. 12:78 only authorizes such an agreement when contracted by two or more shareholders, and (2) the contract is invalid as an ordinary contract, because it contains a potestative condition in that the trustees are free to terminate at will. The trial court invalidated the contract on the second ground.
Taken in the context of the overall circumstances, the contract at issue is not a voting trust contemplated by R.S. 12:78. Rather, the contract is a security device, designed to protect the guarantors of plaintiff’s promissory note by giving them the right to control the management of the *678 corporation during the term of the loan.[2] The intent of the contract therefore was to constitute defendants as pledgees, rather than trustees.
Normally, only the registered owner of shares listed on the books of the corporation have the right to vote the stock. Chappius v. Spencer, 167 La. 527, 119 So. 697 (La.1928); D’Amico v. Canizaro, 256 La. 801, 239 So.2d 339 (La.1970). In Emile Babst Co. v. Commercial Enterprises, Inc., 274 So.2d 742 (La.App. 4th Cir. 1973), cert. den. 277 So.2d 673, noted 68 A.L.R.3d 674 (1976), this court held that, despite the revision and reenactment of the Business Corporation Law, a mere pledgee cannot vote the pledged stock unless the shares have been transferred on the books of the corporation to the pledgee.[3]
In the Babst case the owner had not expressly authorized the pledgee to vote the shares, and the pledgee sought to do so simply on the basis of his status as pledgee. The present case, however, does not involve a mere pledgee, but rather a pledgee upon whom the owner of the stock has expressly conferred by contract the right to vote the shares. Since R.S. 12:75 D requires a transfer on the books of the corporation to entitle the pledgee to vote the shares, the contract expressly granting the pledgee the right to vote the share can only be interpreted reasonably as implicitly granting the pledgee the right to obtain a transfer of the shares upon the books of the corporation.
Under our interpretation of R.S. 12:75 D the type of security device executed by the parties in the present case is statutorily authorized. Under the contract plaintiff turned over the shares of stock to defendants and granted them “the unqualified right, without any restrictions or limitations, to vote the stock deposited with them in accordance with their own best judgment and free from any interference or control” by plaintiff. The right to vote the shares (a right not necessarily accorded to a mere pledgee) could hardly have been more clearly conferred, and with this right the pledgee necessarily was given the right to take the formal steps necessary to accomplish utilization of that right.
We therefore conclude that a contract giving the pledgee the unqualified right to vote shares of stock pledged to him is not invalid as a contract which separates voting rights from ownership interest, but is valid as a contract authorized by R.S. 12:75 D, and that the pledgee may enforce the contract by having the shares of stock transferred on the books of the corporation during the existence of the pledge.
Ill
Finally, the contract was not invalid as one containing a potestative condition. Nullity on account of a potestative condition is limited to those potestative conditions which make the obligation dependent solely on the exercise of the obligor’s will. C.C. arts. 2034, 2035. Under the contract at issue defendants were clearly the obligees (the parties in whose favor the obligation was contracted), since they had performed their obligation concurrently with the execution of the contract by guaranteeing the loan and furnishing the additional security.[4] C.C. art. 3556(20). An obligation may validly be made to depend on the will of the obligee for its duration. C.C. art. 2036. The contract was therefore not null on account of an invalidating potestative condition.
Accordingly, the partial summary judgment rendered by the trial court is set *679 aside, and the matter is remanded for further proceedings. Costs are to be assessed upon final disposition.

PARTIAL SUMMARY JUDGMENT SET ASIDE, CASE REMANDED.

. The judgment, couched in terms of a preliminary injunction, was not appealed within 15 days as required by C.C.P. art. 3612 for judgments relating to preliminary injunctions. However, the only matter before the court at the time of the judgment was a motion for partial summary judgment declaring the contract invalid, the rule for preliminary injunction having previously been denied, and the parties had stipulated that an injunction should issue if the contract was invalid. Moreover, the Supreme Court, on application for supervisory writs, ordered the granting of a suspensive appeal at a time more than 15 days after the judgment.
We therefore treat this appeal as one from a partial summary judgment.

. The substance, not the title, determines the nature of the contract. Indeed, in their petition plaintiffs asserted that the contract was a “guise for a security device coupled with a managerial mandate”.

. The Babst case turned on an interpretation of R.S. 12:75 D, which provides:
“A person whose shares are pledged shall be entitled to vote thereon unless and until such shares have been transferred on the books of the corporation to the pledgee; and thereafter the pledgee shall be entitled to vote thereon.”

. Defendants and intervenors stated they would not have done so without the protection afforded by the two contracts.