SCHOTT, Judge.
This is a suit for damages incurred by First Metropolitan Bank in connection with certificates of stock in Hycel, Inc. and Exchange Oil & Gas Corporation. Plaintiff had taken the stock in pledge from Peter A. Plaia to secure a loan. When Plaia defaulted plaintiff delivered the certificates to its broker, Howard, Weil, Labouisse, Fredricks, Inc. (hereafter “Howard”) with instructions to sell the stock for plaintiff’s account. But when Howard sold the stock and delivered the certificates for transfer to Exchange’s transfer agent Hibernia National Bank of New Orleans (hereafter “Hibernia”), and Hycel’s transfer agent, First National Bank of Dallas (hereafter “First”), these agents *562 refused to transfer the stock because “stop transfer” orders were in effect as to the pledged certificates.
Made defendants were Plaia, Hycel, First, Exchange, Hibernia and Howard. Plaintiff took a default judgment against Plaia and its suit against First was dismissed on an exception to the jurisdiction. Neither of these judgments is on appeal. Plaintiff has appealed from the judgment dismissing its suit against Hycel, Hibernia, Exchange and Howard.
The procedural posture of the case is complicated by the fact that the judgment on appeal, dismissing plaintiff’s suit, expressly did so on exceptions of no cause of action or, alternatively, on motions for judgment on the pleadings in accordance with LSA C.C.P. Art. 965 or for summary judgment pursuant to C.C.P. Art. 966. However, in this court appellees have defended the judgment on the contention that plaintiff as a pledgee, unlike an owner, had no legal right to demand transfer of the stock certificates regardless of the terms of the pledge agreement. This constitutes the principal issue before us.
In passing on the exception of no cause of action, we consider only the well pleaded allegations of plaintiff’s petition which are as follows:
Plaintiff was the holder of Plaia’s $11,000 demand note dated August 26, 1975, secured by a pledge of various securities including those of Exchange and Hycel. (A copy of the note and pledge agreement was annexed to and made part of the petition) After its demand for payment went unheeded plaintiff delivered the certificates to Howard with instructions to sell them. The certificates were accompanied by separate powers of attorney endorsed in blank by Plaia. Howard sold all of the securities for plaintiff’s account and delivered the Exchange and Hycel certificates and powers to Hibernia and First to make transfers of ownership. However, Hibernia and First refused to transfer the shares because stop transfer orders as to Plaia’s certificates were in effect. These orders had been issued because Plaia had previously reported the certificates as lost and had formally requested issuance of duplicate certificates. At that time Plaia and First, as Hycel’s agent, had obtained a lost instrument bond providing for indemnification in favor of First for all loss which might be incurred from the issuance of the duplicate Hycel certificates, and for the assumption of “all liabilities of Plaia in the premises.” Plaia and Hibernia had also obtained a lost instrument bond providing for indemnification in favor of Hibernia for any loss which might be incurred from the issuance of the duplicate Exchange certificates. Upon notice that Hibernia and First refused to transfer the stock, Howard without plaintiff’s authority and for the purpose of covering its short position in these securities, bought back stock of Hycel and Exchange, and charged the cost of these trades in the amount of $12,388.50 to plaintiff’s account.
In a supplemental and amending petition plaintiff further alleged: In 1970 Howard as Plaia’s broker had assisted him in obtaining duplicate Hycel and Exchange certificates on the basis that the originals were lost. When the originals were presented by plaintiff to Howard it was charged with the knowledge that the duplicates were fraudulent and it failed to disclose these facts to plaintiff. However, Howard did alert the transfer agents that these original certificates were “faulty.” Thus, Howard breached its duty to plaintiff as a broker and a fiduciary. Howard conspired with the other defendants to deprive plaintiff of the proceeds from the sale of the stock, to refuse to transfer the stock and/or to return the certificates to plaintiff. Howard committed a wrongful conversion of the certificates by its conduct. Furthermore, Howard was required to complete the transfer in accordance with LSA R.S. 12:621 et seq. and failed to comply therewith. Finally, by Howard’s previous participation with Plaia in the obtaining of duplicate certificates it is estopped from refusing to transfer the originals. .
In contending that it stated a cause of action with these allegations, plaintiff first directs our attention to the following lan *563 guage of the pledge agreement signed by Plaia:
“Should this note not be paid at maturity . First Metropolitan Bank . is hereby authorized to sell the pledged securities . . . without demand, notice to redeem, or notice of the time, place or manner of sale, and without recourse to Judicial Proceedings, at public or private sale, or on any Exchange, at the option of First Metropolitan Bank and is hereby irrevocably authorized to transfer any shares of stock, or other securities, on the books of the company issuing same, to purchase under such public or private sale. First Metropolitan Bank . . . shall have the right to purchase any or all of the pledged securities at such sale, free from any right of redemption on the part of any party hereto, which right is hereby waived and released, and all parties herein shall remain liable for deficiency remaining, with legal interest and all costs. All parties hereto severally consent and agree that the securities or property hereby pledged may be exchanged or surrendered from time to time without notice to, or assent from any party hereto and without in any manner releasing or altering their obligations hereunder. All parties hereto do hereby further irrevocably authorize and empower First Metropolitan Bank, or the holder of this note, at any time to collect, and appropriate and apply to the payment and extinguishment hereof, the interest, dividends or other income accruing and payable on any of the securities or property pledged to secure the payment hereof, and to facilitate such collection, all parties hereto agree that any of the said property may be transferred, at First Metropolitan Bank, or the holder’s option, to the name of the said First Metropolitan Bank, or said holder, or nominee on the books of the company issuing same . . . ”
Plaintiff then argues that this quoted language brings the case within the ambit of LSA C.C. Art. 3165, which provides as follows:
“The creditor cannot, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; provided, that all existing pledges shall remain in force and be subject to the provisions of this act.” (Emphasis ours)
Hycel, Exchange and Hibernia all seem to concede that Article 3165 permits the pledgee to sell stock extra-judicially at private sale, but they contend that the article does not confer on the pledgee the element of ownership enabling it to require a transfer of the stock on the books of the corporation involved. They rely on a number of cases to support this proposition, including Alcolea v. Smith, 150 La. 482, 90 So. 769 (1922), Steiner v. Zammit, 279 So.2d 728 (La.App. 1st Cir. 1973), Emile M. Babst Co., Inc. v. Commercial Enterprises, Inc., 274 So.2d 742 (La.App. 4th Cir. 1973). The Aleóle a case in inapposite. It involves a situation where the pledgee of diamonds apparently sought to appropriate them to himself under circumstances where his absence from his office had made it impossible for plaintiff to redeem the diamonds before the note for which the diamonds were pledged had become due. The court waxed eloquently over the elimination from the statute of language somewhat ancient which had prevented a creditor from appropriating a pledge to himself prior to the amendment of C.C. Art. 3165 in 1972, but *564 left no doubt as to the right of a pledgee to sell the pledged object extra-judicially if that was agreed upon by the parties.
In the Steiner case, the court held that a transfer of stock to the pledgee’s name did not effect a change of ownership of the stock and stated:
“[U]nder the settled law of this state, the pledgee has no authority to dispose of or declare himself to be the owner of the object in pledge absent the express agreement of the pledgor.”
In the instant case there is such an express agreement. In the Babst case this court refused to order the defendant corporation to transfer stock to the name of a pledgee but that case does not disclose the existence of any agreement which might have brought the case within the stated exception of Art. 3165. Furthermore, the two cases which the court in Babst relied on are easily distinguished from the instant case. In Chappuis v. Spencer, 167 La. 527, 119 So. 697 (1929), there was simply an irrevocable power of attorney from the debtor held by the pledgee of the stock. There was no specific agreement authorizing the pledgee to sell as here. The same is true of D’Amico v. Cannizaro, 256 La. 801, 239 So.2d 339 (1970) which has the added distinction that the pledgee himself was insisting that he was not the owner as against an endorser who took the position that the pledgee’s completing an assignment separate from certificate naming himself as assignee caused him to become the owner.
We are confronted here with a pledge agreement in which Plaia authorized plaintiff to sell his stock upon default. This was clearly authorized by Art. 3165. The right to sell would have little value if not coupled with the right to have the stock transferred. We are unable to see what interest Hycel and Exchange would have under ordinary circumstances to decline to make a transfer when presented with the stock certificates and duly executed stock powers. As already discussed, their position on this point is not supported by the jurisprudence on which they rely.
Having concluded that plaintiff as pledgee is not precluded as a matter of law from bringing its action we next consider whether it would be entitled to recover damages if its allegations are true. The thrust of these allegations is that Exchange, Hibernia and Hycel caused duplicate certificates to enter the marketplace protecting themselves against loss by requiring Plaia to post lost instrument bonds, but leaving plaintiff unprotected and ultimately victimized even though it was the holder of the original certificates.
When Plaia reported the certificates as lost and requested the duplicates, the defendant corporations chose to grant that request rather than to require Plaia to bring suit under LSA R.S. 12:640. This decision did not relieve them of the duty the statute imposed had they required Plaia to proceed judicially, namely,
“The giving of bond ... to protect the corporation or any person injured by the issue of the new certificate from any liability or expense, which it or they may incur by reason of the original certificate remaining outstanding.”
Had defendants insisted that Plaia institute proceedings under this statute the burden would have been on Plaia to produce “satisfactory proof” of the loss of the certificates in the first instance, and, had he succeeded, the bond would have been posted to protect those in plaintiff’s position. Plaintiff as a member of the public whom the statute is designed to protect cannot be deprived of that protection because defendants unilaterally and voluntarily cooperated with Plaia.
As to Howard, while it may be that no cause of action was originally stated on the basis of its failure to achieve a transfer of the certificates, in the supplemental and amending petition allegations are made which can reasonably be construed to state that Howard was derelict in its duty as agent of plaintiff in that it accepted the stock certificates for transfer with the *565 knowledge that the certificates were tainted with some sort of irregularity.[1]
Having concluded that plaintiff’s petition as amended states a cause of action against the defendants, we must also consider the judgment as one which granted a judgment on the pleadings or as a summary judgment. Art. 965 provides as follows:
“Any party may move for judgment on the pleadings after the answer is filed, or if an incidental demand has been instituted after the answer thereto has been filed, but within such time as not to delay the trial. For the purposes of this motion, all allegations of fact in mover’s pleadings not denied by the adverse party or by effect of law, and all allegations of fact in the adverse party’s pleadings shall be considered true.”
It seems obvious that the concluding sentence of this article is referring to the plaintiff in speaking of “mover’s pleadings” and the defendant in speaking of “the adverse party’s pleadings” and, therefore, is inapplicable to the instant case. However, in any event, since the pertinent factual allegations of the petition were denied by defendants there is no basis for judgment on the pleadings. Thomas v. Allstate Ins. Co., 367 So.2d 1300 (La.App. 4th Cir. 1979). Some difficulty arises from the last clause of C.C.P. Art. 965 providing that “all allegations of fact in the adverse party’s pleadings shall be considered true” considering the allegations of Exchange and Hibernia in answer that plaintiff had knowledge that the stock certificates were stricken with some infirmity before it delivered the certificates to Howard for sale. However, we do not interpret Art. 965 to mean that these allegations must be considered true because plaintiff did not deny them. Having already alleged in its petition that it had no knowledge of the defect in the original certificates, defendants’ answer alleging that plaintiff was aware of the defects produces a conflict in the pleadings which preclude a motion for judgment on the pleadings. No further pleadings on plaintiff’s part were required for it to deny defendants’ allegations under these circumstances. C.C.P. Art. 852. As to Hycel, it denied plaintiff’s allegations and charged plaintiff with constructive knowledge of the defects in the certificates. The same reasoning as previously discussed precludes Hycel as well as Howard from obtaining a judgment on the pleadings against plaintiff.
There is likewise no support in the record for a motion for summary judgment against plaintiff. Not only were genuine issues of material fact raised in the pleadings which were already discussed, but the deposition of one of plaintiff’s officers contradicts the allegation of Hibernia and Exchange that plaintiff had knowledge of the defects in the certificates before it delivered them to Howard for sale. This deposition discloses that this is a seriously contested issue in the case with reference by defendants’ attorneys to documents and statements from various witnesses which presumably support their position as opposed to this plaintiff’s officer who flatly contradicts their assertion on the point. We have concluded that defendants were not entitled to a summary judgment under C.C.P. Art. 966.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of plaintiff, First Metropolitan Bank, and against defendants, Hycel, Inc., Howard, Weil, Labouisse, Fredricks, Inc., Exchange Oil & Gas Corporation and Hibernia National Bank of New Orleans, overruling their exceptions of no cause of action and denying their motions for judgment on the pleadings or for summary judgment. The case is remanded to the district court for further proceedings. All costs of this appeal are taxed against defendants. The other costs will await the outcome of the case.
REVERSED AND REMANDED.

. We do not suggest that Howard can be held liable for the value of the stock represented by the certificates which it could not sell considering that this resulted from the stop transfer order and was beyond Howard’s control. However, under plaintiffs pleadings Howard may possibly be liable for other damages.