**KOTTEMANN v. AUDUBON HOME-STEAD ASS'N.**

**No. 16267.**

Court of Appeal of Louisiana. Orleans.

Jan. 11, 1937.

H. L. Hammett, of New Orleans, for appellant.

Benj. Y. Wolf, of New Orleans, for appellee.

JANVIER, Judge.

William F. Kottemann, prior to January 27, 1926, was the owner of a certain piece of improved property on Lyon street in this city. Elmo F. Townsend agreed to buy the property provided he could obtain a homestead loan thereon in the sum of $5,500. Application for the loan was made to the Audubon Homestead Association, but the appraisers for that association valued the property at only $4,600, which, under the rules of the association, automatically limited the loan to $3,700, and, therefore, the application was rejected. But Kottemann, in order to consummate the sale, offered to pledge to the association eighteen shares of its own stock as an additional security if it would make the loan to Townsend in the sum of $5,500. There is controversy over whether or not he owned the stock at the time, or agreed to buy it and then pledge it, but, except to

the extent which his testimony on this point affects his credibility, this controversy is not important.

The homestead agreed to make the loan, the understanding with Kottemann being that the stock should remain pledged until the loan had been reduced by Townsend to $3,700. The transaction was closed on this basis, and, on January 27, 1926, the necessary act of sale and the necessary mortgage were executed and on the same day Kottemann delivered to the association the eighteen shares of stock and executed and delivered the written instrument of pledge. Thereafter Townsend made payments, at first with commendable regularity, but later with infrequency, and, on October 31, 1932, as the result of foreclosure proceedings brought by the Homestead Association, the property was sold by the civil sheriff for the parish of Orleans and purchased by the petitioning creditor, to wit, the Audubon Homestead Association, the price paid being $500.

Kottemann, in the meantime, shortly before the consummation of the foreclosure proceedings, realizing the jeopardy in which his pledged stock would be if the property did not sell at foreclosure for a sum sufficient to pay the mortgage debt, brought this suit, seeking to force the Homestead Association to cancel the referred to pledge and to return his stock to him.

As justification for his demand he charges that, for some four years prior to the time at which the association resorted to foreclosure proceedings, the mortgage debtor, Townsend, had been in default in his payments, and that, in spite of this fact, the said association not only took no active step to force payment of the debt, but on many occasions during that period advised Kottemann that Townsend was making regular payments and that his account was in good standing. Kottemann also charges that, had he been advised that Townsend was in arrears, he would have taken steps to protect his interest and to protect his pledged stock by foreclosing on a second mortgage on the said real estate, which second mortgage had been given to him by Townsend as security for the return to him of the stock which he had pledged on Townsend's behalf. He also maintains that the association was at fault in permitting Townsend to continue to occupy the property and that, had aggressive measures been taken, Townsend could have been forced to pay over at least the monthly amount he was receiving from a tenant who, under lease, was occupying a part of the property.

By exception of vagueness, Kottemann was forced to allege certain details with reference to the statements purported to have been made by the homestead officials concerning the Townsend account, and, after the amendment, the association, by exception of no cause of action, contended that in any event Kottemann was without right to complain of the failure to foreclose, since neither the act of mortgage executed by Townsend, nor the pledge executed by Kottemann, contained any provision under which the association might have been forced to foreclose at any particular time after default. This exception having been overruled, defendant Homestead Association answered, alleging that throughout the entire period during which Townsend had been in default, it had made every effort to enforce the collection of the debt and had refrained from foreclosure because of the condition of the real estate market during that period, and that it had informed the said Kottemann of the true condition of Townsend's account at all times when requested by him to do so. It also denied having had any knowledge of the fact that Kottemann was the holder of a second mortgage on the property.

After a trial on the merits, there was judgment dismissing plaintiff's suit, and he has appealed. Defendant homestead, having answered the appeal, contends that the exception of no cause of action should have been sustained and judgment of dismissal rendered thereon, and that the matter should not have been permitted to go to trial on the merits.

■ There is nothing in the mortgage note, nor in the act of mortgage, given as security, which requires that the holder of the note foreclose at any particular time after default. This is a matter which is left entirely to the discretion of the holder of the note. It often happens that, because of the unsatisfactory condition of the real estate market, it would be unwise to resort to foreclosure sale, and, therefore, it is very proper that this matter should be left to the discretion of the holder of the mortgage note. That such condition existed during the period in question is well known, and we could take judicial cognizance thereof even if the rec-

ord did not teem with evidence to that effect. See Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481; Atchison, Topeka & S. F. Ry. Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L. Ed. 273; Succession of Kreher, 179 La. 225, 153 So. 700.

Nor is there anything in the written pledge which gave to Kottemann any right to insist on foreclosure at any particular time after default. The pledge referred specifically to the act of mortgage and did not pretend in any way to create in Kottemann any rights which were greater than the rights of Townsend. That under the circumstances there is no duty to enforce, by foreclosure, collection of the principal debt at any particular time is well settled. The general rule is stated in 47 C.J. at page 997, as follows: "Although the pledgee for the pledgor's default is entitled to sell the collateral, in the absence of a special agreement, he may sell or not at his option and is under no legal obligation to make a sale and is not liable for a depreciation of value of the property after the failure to sell it."

In Giefers v. Negri, 2 La.App. 156 is found the following: "While a payee of a promissory note secured by collateral may take such legal steps as are necessary to enforce payment of the security, he is under no legal obligation to do so, in the absence of any special agreement to that effect."

The principle involved is discussed, also, in Friedlander v. Schmalinski, 35 La.Ann. 520, and in Chaffe v. Purdy, 43 La.Ann. 389, 8 So. 923.

There is no charge that the association acted fraudulently in failing to foreclose, and, in the absence of such a charge, we are unable to see how there could possibly be recovery, because, as we have said, the matter of foreclosure was left to the discretion of the holder of the note. Nevertheless, since the exception of no cause of action was overruled below and the matter decided on the merits and since the allegation of plaintiff's petition may possibly be susceptible of interpretation of a charge of deliberate misleading with a sinister purpose, we have examined the evidence and have found that there is no support for the charge made by Kottemann that the association was not aggressive in its attempts to collect the debt, or for the charge that Kottemann was misled as to the status of Townsend's account. The record shows repeated attempts to force Townsend to pay and shows conclusively that the delay in foreclosing resulted from the belief that there would have been, in all probability, no outside bidders at a foreclosure sale.

Kottemann's statements that he was misled by misrepresentations made by the homestead officials as to the status of Townsend's accounts are flatly contradicted by the officials themselves. They state that on one or two occasions they did tell him that Townsend had made satisfactory payments and that, when those statements were made, such payments had actually been made, but that during the entire period Kottemann was aware of the fact that Townsend's account was badly in arrears.

The issue presented on this question of fact depends upon the credibility of the witnesses, and, apparently, the finding of the trial judge is that Kottemann's statements are not correct. An analysis of his testimony justifies this conclusion. He states that the understanding, when he pledged the stock, was that all payments made by Townsend were to be applied to the principal and that, when the principal was reduced to $3,700, the pledged stock would be released. In this regard he is flatly contradicted by the written instrument itself.

He also states that when he made the pledge he estimated that the payments by Townsend would reduce the principal to $3,700 in about three years, and he gives that as his reason for waiting three years before making inquiry as to the status of Townsend's account. Yet, the evidence shows that he waited four years; in other words, one whole year more than he thought it was necessary for him to wait. If he had actually so estimated, he would certainly not have waited an additional year.

Kottemann also insists that the pledged stock was purchased by him on the day on which it was pledged, but the documentary evidence shows, beyond any question, that he had purchased it on June 5, 1925, which was more than six months before the day on which he says he bought it.

Therefore, even a consideration of the matter on the merits forces the conclusion that plaintiff's statements are, to say the

least, inaccurate, and that the judgment rendered below is correct.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.