As liquidator of the Tangipahoa Bank Trust Company, plaintiff filed suit against the defendant to recover on two notes executed by him and held by the bank in liquidation. One of these notes is dated August 1, 1932, due January 1, 1933, for $1,294.13, bearing interest at the rate of eight per cent per annum from maturity until paid, with the interest paid to October 1, 1933, and providing for attorney's fees in case of suit. The note was secured by 15 shares of stock in the Amite Building Loan Association. The second note is for $134.56 and is dated January 24, 1933, and made payable July 1, 1933, with interest at the same rate and providing for attorney's fees in case of suit, the interest being paid to February 1, 1934. This note is secured by any equity that might exist in the 15 shares of building and loan stock pledged on the first note. The first note shows a credit of $450 under date of July 19, 1938, proceeds of the sale of the pledged stock.
The defendant admits signing the notes, but he avers that the pledged stock was worth more than enough to pay the note for which it was pledged as security at the time of the maturity of the note and for more than a year thereafter; that the bank had a right to sell the pledged stock after the maturity of the note, but instead of doing so, it continued to hold said stock in face of a constant and continued decline in its value; that the Bank Commissioner took over the Amite Building Loan Association in November, 1937, thus causing the said stock to further depreciate in value; that the said Bank Commissioner, in his position as such, knew, or should have known, that said building and loan stock was decreasing in value and should have sold same before taking charge of the Building Loan Association, whereas said stock was not sold by the liquidator of the bank until July, 1938, for only $30 per share, while it could have been sold for at least $70 per share.
There was judgment in favor of the plaintiff for the balance due on the two notes, including interest and attorney's fees. The defendant has taken and perfected a devolutive appeal.
The defendant did not show that he ever offered to pay his notes and secure the stock, nor did he prove that he requested the Bank Commissioner any time after the bank was closed in January, 1934, to sell his stock and apply the proceeds on the notes. Neither did he allege and prove that the plaintiff sold the stock for less than it was worth at the time the sale was made and the proceeds applied to the note, nor did he allege and prove any fraud or *Page 693 
bad faith on the part of the Bank Commissioner in selling the stock and applying the proceeds on the note as he did. The note which the defendant signed gave the holder the right to sell the pledged stock at public or private sale after the maturity of the note and apply the proceeds thereon.
The testimony shows that after the maturity of the note and prior to the placing of the homestead association in the hands of the Bank Commissioner, its shares of stock were sold and purchased by various persons at prices ranging from around $50 per share to $65 or $70 per share. After the association was placed in the hands of the Bank Commissioner, some of its stock sold from $20 to $30 per share, and it is apparent from the testimony that the price of $30 per share for which the plaintiff sold the stock was a fair price for it at the time it was sold.
The pledgee of stock which fluctuates in value is under no obligation to protect the pledgor in the decline in value of the stock held in pledge in the absence of instructions from the pledgor to sell the stock after the maturity of the obligation at a time when the creditor or pledgee will lose no advantage by reason of the pledge. In order to hold the pledgee responsible for a decline in the value of stock held in pledge, he must be guilty of some fault or neglect.
The unreported decision of this Court referred to by counsel for defendant in his brief involved the loss or depreciation in the value of some mules which had been mortgaged for a debt, the creditor holding as additional security a pledge on certain bonds. The creditor foreclosed on the mortgage, and instead of having the mules sold in the usual way, entered into some arrangement by which the mules were used by the mortgagor and others, as a result of which the mules became so depreciated in value that they brought very little when finally sold. In that case, the mules covered by the mortgage required a certain amount of care and attention for their preservation, and it was through the fault of the mortgagee that they depreciated in value. The responsibility for the loss or decay of the pledge placed on the pledgee by Article 3167 of the Civil Code implies some fault on the part of the pledgee.
While the Bank Commissioner by reason of his official position was invested with the authority of supervising the homestead association whose stock was held as collateral security by a bank which was being liquidated by the Commissioner, that circumstance, in our opinion, did not change or affect the rights and duties of the bank in liquidation, nor did it lessen the duty and obligation of the defendant to pay the notes. The latter had the same right to pay his notes and secure his stock after the bank was placed in liquidation as he did before. He also had the same opportunity of ascertaining the value of his stock and procuring a purchaser therefor after the bank was placed in liquidation as he did before. He had as much or more interest in securing a good price for the pledged stock as did the bank, and it was as much or more his duty to see that the stock was sold at a propitious time as it was the duty of the bank to do so.
Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of appellant in both courts.