573 So.2d 1262 (1991)
WHITNEY NATIONAL BANK
v.
Toby Weatherly JEFFERS, et al.
No. 90-CA-0619.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
*1263 William T. Finn, Roy E. Blossman, Lynn F. Ives, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for Whitney Nat. Bank.
Donald A. Meyer, Barry H. Grodsky, Shushan, Meyer, Jackson, McPherson and Herzog, New Orleans, for Toby Weatherly Jeffers.
Before BARRY, WILLIAMS and PLOTKIN, JJ.
WILLIAMS, Judge.
Plaintiff-in-reconvention, Toby Weatherly Jeffers, appeals the dismissal of her reconventional demand filed against Whitney National Bank. Jeffers claims the trial court erred by granting Whitney's peremptory exception which raised the objection of no cause of action and, alternatively, by dismissing her reconventional demand without allowing amendment of her pleadings. We disagree and affirm the trial court's judgment.

FACTUAL AND PROCEDURAL HISTORY
Defendant-in-reconvention, Whitney National Bank, filed suit against Jeffers on October 28, 1988 to collect on a promissory note. The note, made payable to Whitney in the original sum of $142,350, was executed on December 30, 1983 by Robert Jeffers, Jr. and William M. Katz. Magazine Street Properties, a partnership in commendam of which Robert Jeffers was president, orally pledged to Whitney a second mortgage note as security for the promissory note.[1] The second mortgage note went into default in 1984.
Following the death of Robert Jeffers, the judgment of possession rendered in his succession proceedings recognized Jeffers as his universal legatee and surviving spouse. In her capacity as testamentary executrix of his succession, Jeffers acknowledged the succession's indebtedness to Whitney in the amount of $142,350 on *1264 the December 30, 1983 promissory note.[2] Jeffers subsequently accepted the succession unconditionally without benefit of inventory.
After Whitney served process on Jeffers, she filed a peremptory exception. The exception raised the objection of no cause of action based upon her lack of personal liability on the promissory note under community property laws, citing LSA-C.C. art. 2357,[3] and under LSA-R.S. 9:1421[4]. Whitney opposed the exception, asserting Jeffers' liability under succession laws, citing LSA-C.C. art. 1426,[5] and asserting the inapplicability of LSA-R.S. 9:1421, a provision affecting substantive rights, which was enacted after Jeffers was placed in possession of her husband's estate. Following its June 2, 1989 hearing, the trial court denied Jeffers' exception. Thereafter, on June 21, 1989, Jeffers filed her answer and reconventional demand.
Jeffers' reconventional demand claims:
XXXV.
Whitney, arbitrarily and capriciously, failed, refused and/or neglected to properly enforce the terms and conditions of the second mortgage note and second mortgage on the property by:
1. Failing to collect rental on the income generating property made the subject of the second mortgage;
2. Proceeding to enforce its security interests in the property by foreclosure;
3. Causing unreasonable delay which resulted in the devaluation of the property and the collateral in general; and
4. By refusing to release the second collateral mortgage note to William Katz and/or Magazine Street Properties for the purpose of enforcing its terms and conditions to satisfy the indebtedness being sued upon in this matter by Whitney.
* * * * * *
XXXVII.
However, due to the Whitney's failure in attempting to enforce the second mortgage note, it has improperly and unlawfully prejudiced the rights of Jeffers under the original promissory note, particularly in light of the fact the rental income is still being accrued in this property but not being collected by Whitney.
XXXVIII.
The Whitney negotiated with certain parties involved with the second mortgage note all to the detriment of Jeffers and to the best of Jeffers' knowledge *1265 and belief, Barona, a co-defendant in the primary claim by Whitney, was a customer of the Whitney and was made aware of the Whitney's actions, further to the detriment of Jeffers.
XXXIX.
Whitney has an affirmative obligation to mitigate its damages and has blatantly refused and/or neglected to do so by not properly and timely enforcing the terms and conditions of this second mortgage note and accordingly, Jeffers has been severely and unjustifiably prejudiced.
In response, Whitney filed a peremptory exception claiming Jeffers' reconventional demand fails to state a cause of action. Whitney's exception claims that, as pledgee, it has absolutely no obligation to enforce the pledged mortgage note or to return the note to the pledgor. Jeffers opposed the exception, asserting her petition in reconvention sets forth a lender liability cause of action, especially as Louisiana law considers "good faith" an element of every contract.
Following a hearing, the trial court granted Whitney's exception and dismissed Jeffers' reconventional demand on November 6, 1989. Thereafter, Jeffers devolutively appealed.

LEGAL PRECEPTS

A. Peremptory Exception Raising the Objection of No Cause Of Action
The peremptory exception raising the objection of no cause of action questions whether the petition alleges grievances for which the law affords a remedy. Sajare Interests, Ltd. v. Esplanade Management, Inc., 459 So.2d 748 (La.App. 4th 1984); Reed v. Yor-Wil, Inc., 406 So.2d 236 (La.App. 1st Cir.1981), writ den., 410 So.2d 1135 (La.1982). For the adjudication of the objection, the well-pleaded facts of the petition are accepted as true. Reed v. Yor-Wil, Inc., supra. No evidence may be introduced at any time to support or controvert the objection. LSA-C.C.P. art. 931; Ustica Enterprises, Inc. v. Costello, 434 So.2d 137 (La.App. 5th Cir.1983), on reh'ng, 454 So.2d 908 (La.App. 5th Cir. 1984). Contrary factual assertions are considered defenses which must be tried on the merits. Sajare Interests, Ltd. v. Esplanade Management, supra.
LSA-C.C.P. art. 934 directs that a judgment sustaining the peremptory exception shall permit amendment to the petition when the grounds of the objection may be removed by amendment. Reed v. Yor-Wil, Inc., supra. Nevertheless, in the absence of a showing of manifest error or an abuse of discretion, the trial court's finding that the grounds "cannot" be removed by amendment should not be disturbed on appeal. Gates v. Hanover Ins. Co., 218 So.2d 648 (La. 4th Cir.1969) ["In spite of the language of article 934 wherein it provides that amendments shall be ordered when the grounds of the objection may be removed by amendment, the decision to allow amendment finally rests within the discretion of the court."]; Litomisky v. St. Charles High School, 482 So.2d 30 (La. App. 5th Cir.1986).
The right to amend is not absolute. Amendment is not permitted when it would constitute a vain and useless act. Gibbs Const. Co., Inc. v. Board of Sup'rs of L.S.U., 447 So.2d 90 (La.App. 4th Cir. 1984); Buxton v. Fireman's Fund Ins. Co., 422 So.2d 647 (La.App. 3d Cir.1982). Thus, while the mandatory nature of the right to amend is clear and unambiguous, it is notably qualified by the restriction that the objections must be curable. Suttles v. Gibson, 422 So.2d 1308 (La.App. 5th Cir. 1982).

B. Pledge Of A Movable
A pledge is a contract by which one debtor gives something to his creditor as a security for his debt. LSA-C.C. art. 3133.[6] *1266 A person may also give a pledge for the debt of another. LSA-C.C. arts. 3141, 3145. It is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge and, consequently, that actual delivery of it be made to him, unless he has possession of it already by some other right. LSA-C.C. art. 3152.
When a movable is pledged as security, the movable is said to be pawned. LSA-C.C. art. 3135. The pawn invests the creditor with the right of causing his debt to be satisfied by privilege and in preference to the other creditors of his debtor, out of the product of the movable, corporeal or incorporeal, which has been pledged. LSA-C.C. art. 3157. However, the pledgee has the right but no obligation to execute against the pledge. Naquin v. American Bank of Luling, 347 So.2d 332, 334 (La. App. 4th Cir.1977), writ den., 367 So.2d 1184 (La.1979). The pledgee has the legal right to proceed on the pledge or to wait until the maturity of the principal obligation and sue on it, disregarding the pledged property. Peoples Bank v. Cookston, 142 So. 285 (La.App. 2d Cir.1932).
The pledgee's privilege will not subsist on the pledge unless the thing pledged (a corporeal movable or the evidence of the credit) has been actually put and remained in the possession of the creditor, or of a third person agreed upon by the parties. LSA-C.C. art. 3162. The creditor who is in possession of the pledge, can only be compelled to return it, when he has received the whole payment of the principal as well as the interest and costs. LSA-C.C. art. 3164. The pledgor is not entitled to the return of his pledged property until the principal obligation is paid. First National Bank of Shreveport v. Davis, 147 So. 93 (La.App. 2d Cir.1933). Cf. Kottemann v. Audubon Homestead Ass'n, 171 So. 598 (Orl.1937).
The creditor is answerable for the loss or decay of the pledge which may happen through his fault. LSA-C.C. art. 3167. When a credit is pledged, in testing whether the creditor has been at fault in any particular case, the degree of care necessary to be used in protecting the pledge "must not be confounded with that exacted from him [the creditor] in causing to be enforced the obligations themselves of the debtor under the credit." O'Kelley v. Ferguson, 49 La.Ann. 1230, 22 So. 783, 787 (La.1897). Cf. Naquin v. American Bank of Luling, supra, 347 So.2d at 334 ["The bank's only obligation is to preserve the pledge against `loss or decay,' C.C. 3167, and to return it when the principal obligation is discharged, C.C. art. 3164."]; People's Bank v. Cookston, supra, 142 So. at 286 [the condition of the pledged collateral mortgage note was not changed by the failure of pledgee to perform any act required by law, when pledgee allowed a junior collateral mortgage holder to sell the mortgaged property at auction]. The pledgee's duty of care does not result in liability for loss caused by the decline in the market value of the pledged thing after the debt has become due. Slovenko, "Of Pledge," 33 Tul.L.Rev. 57, 120 (1958); see also, Brock v. Kemp, 6 So.2d 692 (La.App. 1st Cir.1942); Kottemann v. Audubon Homestead Ass'n, supra. Rather, it is the responsibility of the pledgor, if he wishes to protect himself against the decline in the market, to pay the debt and sell the property himself. 33 Tul.L.Rev. at 120.
The fruits of the pledge are deemed to make a part of it. LSA-C.C. art. 3168. Therefore, the fruits of the pledge remain in the hands of the creditor. Id. But the creditor can not appropriate them to his own use. Id. On the contrary, he is bound to give an account of them to *1267 the debtor, or to deduct the fruits from what may be due him. Id.
If a credit which has been given in pledge becomes due before it is redeemed by the person pawning it, the creditor, by virtue of the transfer which has been made to him, shall be justified in receiving the amount, and in taking measures to recover it. LSA-C.C. art. 3170. However, while the creditor has the right, he is not bound to enforce pledged collateral when it matures. Friedlander v. Schmalinski, 35 La. Ann. 520 (1883) ["Where a debtor agrees to pay a certain sum at a specified time, less the amount which pledged collateral may realize, the creditor may, as pledgee, take legal steps to enforce payment of the securities, but is under no legal obligation to do so, in the absence of any special understanding for that purpose."]. Cf. O'Kelley v. Ferguson, supra, 22 So. at 787 [the language of article 3170 is permissive, not mandatory].

APPLICATION OF LEGAL PRECEPTS TO FACTS
Jeffers claims the trial court erred by sustaining the exception as she set forth a lender liability claim against Whitney and, alternatively, by dismissing her reconventional demand without granting her the opportunity to amend her pleadings.
Jeffers claims the pledgee's right of enforcement against the pledged property carries with it the collateral duty to use good faith when deciding not to exercise that right. Thus, she claims Whitney's failure to seize the property subject to the second mortgage caused the devaluation of the pledge and the loss of the mortgaged property's revenues. She claims that had Whitney seized the property and/or its rents, Whitney would have been able to satisfy the indebtedness due it under her primary obligation.
Citing LSA-C.C. art. 3164, Whitney defends its right of retention, claiming a pledgee has no obligation to return pledged property until the full amount of the debt has been paid. Whitney also cites LSA-C.C. art. 3170 and O'Kelley v. Ferguson, supra, as authority for it having no legal obligation to enforce the pledged note. Whitney further asserts it is not liable for the decline in the market value of the pledged thing as it is Jeffers' responsibility to pay the primary obligation so that the pledged thing can be returned for her to protect it.
Finally, Whitney contends the allegation that it should have seized the rental income of the property subject to the second mortgage, is unrealistic. If it had seized the mortgaged property's income, Whitney claims the first mortgagee would have foreclosed on the property, resulting in the discharge of the second mortgage. Thus, giving all deference to Jeffers' allegations, Whitney asserts the reconventional demand "remains absolutely void of any facts supporting any claim for the damages alleged." We agree.
The pawn of the second mortgage note invested Whitney with the right of causing the debt evidenced by the promissory note to be satisfied out of the second mortgage note. LSA-C.C. art. 3157. However, Whitney was not obligated to collect on the debt by enforcing or executing on the second mortgage note. Naquin v. American Bank of Luling, supra; People's Bank v. Cookston, supra. The pledge is only an auxiliary obligation. Id. The promissory note remained the primary obligation. Therefore, Whitney had the legal right to proceed on the principal debt instead of the security device. People's Bank v. Cookston, supra. Cf. D'Amico v. Canizaro, 256 La. 801, 239 So.2d 339 (1970).
Whitney could not be compelled to return the pawn until the principal obligation, interest and costs were paid. LSA-C.C. art. 3164; First National Bank of Shreveport v. Davis, supra. To retain its privilege, it was necessary for Whitney to continue its possession of the second mortgage note. LSA-C.C. art. 3162. Thus, Whitney would have acted contrary to its own interests and its legal rights if, as Jeffer's suggests, it had released the second mortgage note prior to the payment of the principal obligation.
*1268 Further, Whitney's legal obligation to protect the pawn from loss or decay did not extend to losses caused by the devaluation of the mortgaged property by market trends. LSA-C.C. art. 3167; Naquin v. American Bank of Luling, supra. Rather, if Jeffers wished to protect the second mortgage from such a contingency, she should have paid the promissory note and reclaimed the pledge. She would then bear the costs of seizing the mortgaged property and/or its rents and bear the risk of the first mortgagee seizing the property and discharging the second mortgage. Jeffers' duties should not be confused with the duties of the pledgee.
Contrary to Jeffers' contentions, her reconventional demand fails to state a cause of action. Whitney had no duty 1) to seize the rentals of the property subject to the second mortgage, 2) to execute against the pledge by foreclosing on the second mortgage note (which went into default in 1984), 3) to predict market trends and prevent the devaluation of the second mortgage by foreclosing at an early date, or 4) to release the second mortgage note prior to the payment of the primary obligation. Certainly, if any or all of these actions had been taken by the bank, Jeffers might be in a better position than she is in now. Merely because certain actions, if taken by the bank, would have been in her best interest, the bank is not made liable for declining to take them.[7] The inherent duty to act in good faith does not require Whitney to act contrary to its own interests.
Alternatively, Jeffers claims the right to amend her reconventional demand "to allege with greater particularity the wrongful acts of the Whitney and to further clarify the basis for liability." However, the right of amendment contemplated by LSA-C.C.P. art. 934 is not absolute. The right is qualified by the restriction that the defective petition must be capable of being amended to state a lawful cause of action.
The trial court's judgment reflects that the reconventional demand can not be amended to remove the grounds of Whitney's objection. We agree. Jeffers did not allege in brief or allude in oral argument that additional factual allegations can be made which constitute a cause of action against Whitney. Thus, as Jeffers has not shown that the trial court committed manifest error or abused its discretion in determining amendment would be a vain and useless act, the trial court's ruling will not be disturbed on appeal. Gates v. Hanover Ins. Co., supra; Litomisky v. St. Charles High School, supra.
For the reasons assigned, the judgment of the trial court is affirmed. The parties are to bear their own costs.
AFFIRMED.
NOTES
[1] The second mortgage note, owned and held by Magazine Street Properties (MSP), was executed in conjunction with the sale of MSP immovable property to Barona-Frazier Properties.
[2] By letter dated March 23, 1984, Jeffers in her capacity as Testamentary Executrix approved a letter written to Whitney stating, "... this is to acknowledge on behalf of the Testamentary Executrix that the Succession of Robert E. Jeffers, Jr. is indebted to the Whitney National Bank in the amounts of $9,500.00 on a promissory note dated December 5, 1983 and $142,350.00 on a promissory note dated December 30, 1983."
[3] LSA-C.C. art. 2357 provides in pertinent part:

Art. 2357. Satisfaction of obligation after termination of regime
An obligation incurred by a spouse before or during the community property regime, may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation.
[4] LSA-R.S. 9:1421 provides as follows:

1421. Acceptance of succession; benefit of inventory
Notwithstanding any provision in the law to the contrary, including but not limited to Civil Code Articles 976 through 1013 and Civil Code Articles 1415 through 1466, every successor is presumed and is deemed to have accepted a succession under benefit of inventory even though the acceptance is unconditional, and where an inventory or descriptive list has been executed. In such case, every heir or legatee, whether particular or under universal title, shall not in any manner become personally liable for any debt or obligation of the decedent or his estate, except to the extent and value or amount of his inheritance; however, any such heir or legatee may, in the petition for possession or by a separate instrument in writing, personally obligate himself for any or all of such debts or obligations.
[5] LSA-C.C. art. 1426 provides as follows:

Art. 1426. Personal liability of sole heir or universal legatee
When the deceased has left one sole heir, or has bequeathed all his property universally to the same person, this heir or universal legatee is bound for the payment of the whole of the debts of the succession, and may be sued directly and personally as such by those who are creditors of the succession.
[6] LSA-C.C. art. 3133.1 directs that this 1983 pledge is governed by Louisiana Civil Code, Title XX, entitled "Of Pledge." LSA-C.C. art. 3133.1 provides as follows:

Art. 3133.1. Relation to Chapter 9 of the Louisiana Commercial Laws
This Title shall apply to all pledges of movables that are delivered prior to the time Chapter 9 of the Louisiana Commercial Laws [R.S. 10:9-101 et seq.] becomes effective, including without limitation those pledges that may secure future obligations and lines of credit.
Section 1 of Acts 1988, No. 528 enacted Chapter 9 of Title 10 of the Louisiana Revised Statutes of 1950. See LSA-R.S. 10:9-101 et seq. Section 4 of Act 1988, No. 528 provides: "The provisions of this Act shall become effective on July 1, 1989." Section 1 of Acts 1989, 1st Ex. Sess., No. 12 amended Section 4 of Acts 1988, No. 528, to provide: "The provisions of this Act shall become effective on January 1, 1990."
[7] See O'Kelley v. Ferguson, supra., 22 So. at 787 ["A pledgee may be held bound to see that demand of payment and notice of protest be given in the case of the pledge of negotiable notes, and that the notes be not permitted to prescribe while in his hands, and yet not be called on to have recourse to any of the `extraordinary remedies' of the law which carry possible damages with them. Defendants in this case make no demand upon the plaintiff to take action, made no tender of costs, nor offer of indemnity. Hughes v. Boyce, 2 La.Ann. 805."].