PRECEPT CREDIT        \*        NO. 2021-CA-0670
OPPORTUNITIES FUND, L.P.

                               \*

VERSUS                           COURT OF APPEAL

                               \*

TERINA L. WALKER,               FOURTH CIRCUIT
AMERICAN ACCEPTANCE,       \*
INC., THE UNITED STATES             STATE OF LOUISIANA
OF AMERICA, JOHN DOE 1,    \* \* \* \* \* \* \*
AND JOHN DOE 2

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-11660, DIVISION "F-14"
Honorable Jennifer M Medley
* * * * * *
**Judge Rosemary Ledet**

* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Pro Tempore Lynn Luker, Pro
Tempore Judge Madeline Jasmine)

James E. Uschold
Mark J. Boudreau
JAMES E. USCHOLD, PLC
700 Camp Street, Suite 317
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLEE

David H. Alfortish
2801 Kabel Drive
New Orleans, LA 70131

      COUNSEL FOR DEFENDANT/APPELLANT

                               **AFFIRMED**
                               **June 22, 2022**

This is a tax sale title dispute. The plaintiff—Precept Credit Opportunities Fund, L.P. ("Precept")—is the tax sale title purchaser; the defendant—Terina Walker ("Ms. Walker")—is the former property owner. Ms. Walker appeals the trial court's final judgment granting Precept's summary judgment motion, quieting its tax sale title, and confirming its ownership of the property located at 4845 Tulip Street, New Orleans, Louisiana ("the Property").[1] For the reasons that follow, we affirm.

### Factual and Procedural Background

In May 1999, Ms. Walker acquired the Property. In March 2015, the City of New Orleans (the "City") conducted a tax sale of the Property for delinquent 2014 taxes. Precept was the winning bidder. The City issued a tax sale certificate to Precept, documenting its purchase of a tax sale title. Precept recorded its tax sale

---

[1] In addition to Ms. Walker, Precept named four other defendants—American Acceptance Inc.; The United State of America; John Doe1; and John Doe 2. The record reflects that as to the two non-fictitious defendants, partial final judgments were rendered. A partial final default judgment was issued in Precept's favor against American Acceptance, Inc., in July 2020. A partial final consent judgment was entered into between The United States of American and Precept in September 2020. The other two named defendants—John Doe 1 and John Doe 2—are fictitious defendants. Thus, the judgment before us on appeal granting Precept's summary judgment motion against Ms. Walker is a valid, final judgment.

1

certificate in the mortgage record in April 2015. In June 2015, Precept mailed a post-sale notice to Ms. Walker pursuant to La. R.S. 47:2156(A)(1).[2] That same month, the City mailed two notices to Ms. Walker, informing her of the tax sale of the Property.

In April 2018, the three-year redemption period set forth in La. Const. art. VII, §25(B)(1) expired without the Property being redeemed.[3] Six months later, in November 2018, Precept filed this suit to quiet its tax sale title and to confirm its ownership pursuant to La. R.S. 47:2266.[4] Ms. Walker was served with Precept's petition in December 2018.[5] Because Ms. Walker failed to file an answer, on October 2, 2019, Precept moved for entry of preliminary default. The following day, the trial court entered a preliminary default against Ms. Walker. The trial court, thereafter, signed a judgment granting the motion to confirm the default judgment.

---

[2] La. R.S. 47:2156(A) provides:

> Within the applicable redemptive period, the tax sale purchaser may send a written notice to any or all tax sale parties notifying the parties of the sale. The notice shall provide full and accurate information necessary to contact the tax sale purchaser, including the name, physical address, and telephone number of the purchaser. It shall be accompanied by a copy of the tax sale certificate received by the tax sale purchaser under the provisions of this Part and copies of the documents that the purchaser received with that sale. The notice shall inform the tax sale parties that the failure to redeem the property prior to the expiration of the applicable redemptive period will terminate the right to redeem the property, and the purchaser will have the right to seek confirmation of the tax title and take actual possession of the property. The notice shall be sufficient if it is in the form set forth in Subsection B of this Section.

[3] La. Const. art. VII, §25(B)(1) provides that the property "shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption."

[4] La. R.S. 47:2266 (A)(1) provides that "[a]fter expiration of the redemptive period, an acquiring person may institute an ordinary proceeding against the tax sale parties whose interests the petitioner seeks to be terminated." La. R.S. 47:2266(A)(2) provides that "[i]f no proceeding to annul the sale has been instituted after the lapse of six months after the date of service of petition and citation, judgment shall be rendered quieting and confirming the title and the full ownership interest therein."

[5] Ms. Walker does not dispute that she was served with the petition.

The trial court granted Ms. Walker's motion for new trial ("MNT"). This Court granted Precept's supervisory writ application, reversed the trial court's judgment granting the MNT, and reinstated the default judgment. *Precept Credit Opportunities Fund, LP v. Walker*, 20-0131 (La. App. 4 Cir. 6/3/20), 302 So.3d 1. The Louisiana Supreme Court granted Ms. Walker's supervisory writ and reinstated the trial court's judgment granting the MNT. *Precept Credit Opportunities Fund, LP v. Walker*, 20-00818 (La. 11/18/20), 304 So.3d 68.

In December 2020, Ms. Walker answered Precept's petition. In her answer, she asserted two defenses—a compromise agreement between her and Precept (the "Compromise"),[6] and a payment she made of 2014 taxes before the tax sale. As to the payment, she cited a September 11, 2014 receipt from the City (the "Receipt").[7]

Four months later, in April 2021, Precept filed a summary judgement motion. Opposing the motion, Ms. Walker contended that there were at least two contested material issues of facts—the same two issues she raised in her answer regarding the Compromise and the Receipt. In support of her opposition, Ms. Walker submitted her own affidavit and six exhibits. In her affidavit, she attested, among other things, that on September 11, 2014, she paid the City $949.59 and that she "[w]as under the impression that her property tax obligations to the City of New Orleans through 2014 were paid in full." The exhibits she submitted included

---

[6] As to the Compromise, Ms. Walker averred that "[t]his settlement is memorialized in an email dated September 17, 2018 from Harrison Alley to undersigned counsel. Precept Capital agreed to accept the sum of $4,892.00 from defendant, Terina Walker, in order to quit claim the property back to defendant. Said payment was to be made on or before October 31, 2018. However, in an email dated September 26, 2018, Precept Capital stated that it would not accept the agreed-upon settlement payment."

[7] As to the Receipt, Ms. Walker averred that "she made a payment towards her 2014 property tax in the amount of $168.50 on September 11, 2014. The City of New Orleans issued defendant, Terina Walker, a receipt for that payment."

copies of the emails exchanged between counsel that Ms. Walker contends memorialized the Compromise and a copy of the Receipt.

Following a Zoom hearing, the trial court, in August 2021, granted Precept's summary judgment motion and entered a final judgment quieting Precept's tax sale title and confirming its ownership of the Property. This appeal followed.

## Standard of Review and Summary Judgment Principles

As the Louisiana Supreme Court observed, "[a] summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Planchard v. New Hotel Monteleone, LLC*, 21-00347, pp. 2-3 (La. 12/10/21), 332 So.3d 623, 625. The governing statutory provision states that a "summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The burden of proof on a summary judgment motion is governed by La. C.C.P. art. 966(D)(1), which provides for a shifting burden of proof.[8]

---

[8] La. C.C.P. art. 966(D)(1) provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

The summary judgment procedure is favored; and the procedure "is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). The purpose of the procedure is to pierce the pleadings and to assess the evidence to determine if there are any genuine issues of material fact requiring a trial. *See Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 19-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214. As this Court has observed, "[t]he determination of whether a fact is material turns on the applicable substantive law." *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270. Stated otherwise, "facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Louisiana Bank v. Williams*, 591 So.2d 375, 377 (La. App. 3d Cir. 1991).

### Discussion

On appeal, Ms. Walker assigns the following three errors: (i) a material issue of fact exists regarding the Receipt; (ii) a material issue of fact exists regarding the Compromise; and (iii) the summary judgment motion was procedurally improper.[9] We separately address each issue.

*The Receipt*

Ms. Walker argues that the Receipt establishes some type of payment of 2014 taxes and creates a material issue of fact precluding summary judgment. She further argues that a tax sale of property for which taxes that were paid before the sale is an absolute nullity and, thus, the redemption period set forth in the

---

[9] As discussed elsewhere in this opinion, Ms. Walker's third assignment is that the arguments raised in Precept's summary judgment motion should have been asserted in a peremptory exception. According to Ms. Walker, by filing a summary judgment motion instead of an exception, Precept deprived her of the opportunity to amend her pleadings under La. C.C.P. art. 934.

Louisiana Constitution is inapplicable. In support, she cites *Heirs of John Beckwith LLC v. Sims*, 02-0476, p. 28 (La. App. 4 Cir. 3/10/21), 315 So.3d 306, 326, and the cases cited therein.

Precept counters that the Receipt reflects Ms. Walker's payment of tax sale costs, not 2014 taxes. Moreover, Precept contends that, even assuming the Receipt reflects her payment of 2014 taxes, it was, at best, a partial payment, which would not invalidate a tax sale. In support, it cites La. Const. art. VII, §25(C), which provides that "[t]he fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid."[10] Precept contends that even if the argument raised in Ms. Walker's answer could qualify as a payment nullity, any such action is preempted under La. R.S. 47:2266 and La. R.S. 47: 2287. Precept also points out that, in support of its summary judgment motion, it attached a certified copy of its tax sale certificate, which is "prima facie evidence of the regularity of all matters regarding the tax sale and the validity of the tax sale." La. R.S. 47:2155. As a

---

[10] La. Const. art. VII, §25 provides in full:

> No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.

result, the burden of proof shifted to Ms. Walker to prove the invalidity of the tax sale certificate, which she failed to do.[11]

At the outset, we note that the law governing this matter is the law in effect at the time of the tax sale—March 2015. *Cent. Properties v. Fairway Gardenhomes, LLC*, 16-1855, p. 10 (La. 6/27/17), 225 So.3d 441, 448 (observing that "it is the language in effect at the time of the tax sale in 2010 that applies to this sale, and that we consider today"). The Louisiana Legislature in 2008—seven years before the tax sale of the Property—revamped the law governing tax sales by passing La. Acts, No. 819, effective January 1, 2009. *Id.*

Under the 2008 revision, "the tax collector no longer auctions the real estate itself; instead, the tax collector auctions a tax sale title to the property, as evidenced by a tax sale certificate per La.[R.S.] 47:2155, which neither transfers nor terminates the property interest of any person in the property." *Fairway Gardenhomes*, 16-1855, p. 11, 225 So.3d at 448; *see* La. R.S. 47:2121(B) (providing that " [n]o tax sale shall transfer or terminate the property interest of any person in tax sale property or adjudicated property until that person has been duly notified and both the redemptive period and any right held by that person to assert a payment or redemption nullity . . . have terminated").

Ms. Walker's reliance on *Beckwith* and the cases cited therein in support of the principle that a payment of taxes is grounds for an absolute nullity claim is misplaced. The tax sales in *Beckwith* and the cases cited therein occurred before

---

[11] Precept further contends that Ms. Walker was duly notified of the tax sale by the City and received actual notice of the tax sale from Precept. Those notices were sent at least six months before the expiration of the redemption period. As a result, Precept contends that title transferred to it when the redemption period expired without redemption. La. R.S. 47:2121(C). Additionally, Ms. Walker was served with the petition and citation and did not file a nullity action within six months. As such, "judgment shall be rendered quieting and confirming the title and the full ownership interest therein." La. R.S. 47:2266.

the 2008 revisions, and those cases were decided under the pre-revision law. Under the 2008 revisions, "[t]ax sales may no longer be attacked as absolute nullities. Instead, there are three statutorily enumerated challenges, which if proven, will nullify a tax sale certificate——[i] a payment nullity, [ii] [a] redemption nullity, or [iii] a nullity under La. R.S. 47:2162 [a sale to a prohibited buyer]." *Stow-Serge v. Side by Side Redevelopment, Inc.*, 20-0015, p. 5 (La. App. 4 Cir. 6/10/20), 302 So.3d 71, 76, *writ denied*, 20-00870 (La. 10/14/20), 302 So.3d 1120 (citing La. R.S. 47:2286); *see also Fairway Gardenhomes*, 16-1855, p. 12, 225 So.3d at 449. All three of these statutorily enumerated challenges are relative nullities; "[a]ll relative nullities are capable of being cured." *Stow-Serge*, *supra.* "[P]roblems with a tax sale itself and a tax sale certificate do not create a nullity action." La. R.S 47:2155, Official Cmt. (c) (cross-referencing La. R.S. 47:2286).

A payment nullity is the only nullity challenge that arguably applies here.[12] A payment nullity is defined as "a nullity arising from payment of taxes prior to a tax sale, including payment based on dual assessment." La. R.S. 47:2122(8). The Receipt, at best, establishes Ms. Walker's partial payment of 2014 taxes. A claim regarding a partial payment of taxes falls within the ambit of a payment nullity, as defined by La. R.S. 47:2122(8).

---

[12] The other two types of relative nullities—a redemption nullity and a nullity under La. Rev. Stat. 47:2162 (a sale to a prohibited buyer)—are inapplicable here. A redemption nullity is defined as "the right of a person to annul a tax sale in accordance with R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period." La. R.S. 47:2122(10). Ms. Walker has not contested that she was duly notified of the tax sale or that the three-year redemptive period passed without her redeeming the Property. As to the nullity under La. R.S. 47:2162, this is not a sale to a prohibited buyer. *See* La. R.S. 47:2162 (providing that "[t]he tax collector or tax assessor for the political subdivision, or any other person acting on behalf of the political subdivision whose duties are to assess or collect ad valorem taxes for the political subdivision, shall not buy, either directly or indirectly, any property or tax sale title sold or offered for sale for ad valorem taxes imposed by that political subdivision").

Procedurally, La. R.S. 47:2286 requires that a nullity challenge be filed in the district court of the parish in which the property is located, but provides that "the [nullity] action may be brought as a reconventional demand or an intervention in an action to quiet title under R.S. 47:2266 or as an intervention in a monition proceeding under R.S. 47:2271 through 2280." Ms. Walker, however, has filed neither a reconventional demand, in this case, nor a separate nullity action asserting a payment nullity claim. Instead, the only pleading she has filed is an answer.

Regardless, even assuming Ms. Walker's answer could be treated as validly asserting a payment nullity challenge, her claim would be prescribed under La. R.S. 47:2287(B), which provides:

> An action to annul a tax sale on grounds of a payment nullity shall be before the later of:
>
> (1)   Five years after the recordation of the tax sale certificate.
>
> (2)   If the person bringing the action was not duly notified at least sixty days before the end of that five-year period, then within the sixty days after the date that person was duly notified.

Ms. Walker was duly notified of the tax sale more than sixty days before the end of the five-year period; indeed, she does not dispute that she was notified of the tax sale.[13] Precept's tax sale certificate was recorded in April 2015. Hence, the five-

_____

[13] La. R.S. 47:2122(4) defines "duly notified" as follows:

> [W]ith respect to a particular person, that an effort meeting the requirements of due process of law has been made to identify and to provide that person with a notice that meets the requirements of R.S. 47:2156, 2157, 2206, 2236, or 2275, or with service of a petition and citation in accordance with R.S. 47:2266, regardless of any of the following:
>
> (a) Whether the effort resulted in actual notice to the person.
>
> (b) Whether the one who made the effort was a public official or a private party.
>
> (c) When, after the tax sale, the effort was made."

year prescriptive period ran, under La. R.S. 47:2287(B)(1), in April 2020—five years after the date of recordation of the tax sale certificate. Ms. Walker's answer was not filed until eight months later, in December 2020. Her claim is thus prescribed.

Summarizing, the only nullity challenge arguably applicable here is a payment nullity based on the Receipt. Assuming Ms. Walker's answer can be treated as a valid procedural mechanism to assert a payment nullity claim, her claim is prescribed under La. R.S. 47:2287(B)(1). As a matter of law, the Receipt is insufficient to create a genuine issue of material fact.

*The Compromise*

Ms. Walker's second assignment is that there is a material issue of fact regarding the Compromise, which she contends is memorialized in an email exchange between counsel. Precept counters that there was never a compromise agreement reached between the parties—no offer and acceptance. We agree.

There are two essential elements of a compromise agreement: mutual intention of preventing or putting an end to the litigation, and reciprocal concessions of the parties to adjust their differences. *See* La. C.C. art. 3071 (providing that "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship").

The general rule that a compromise agreement must be in writing is codified in La. C.C. art. 3072. This does not necessarily mean that the parties' agreement must be contained in one document. Indeed, as this Court has observed, "'there is no sacrosanct form which must be followed.'" *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 98-0193, pp. 3-4 (La. App. 4 Cir. 9/30/98), 720 So.2d

10

372, 374 (quoting *Charbonnet v. Ochsner*, 236 So.2d 86, 88 (La. App. 4th Cir. 1970)). An exchange of emails, thus, can constitute a compromise agreement.

Nonetheless, a compromise is a contract between the parties. *Addison v. Reg'l Transit Auth.*, 97-2289, p. 4 (La. App. 4 Cir. 12/3/97), 703 So.2d 810, 812. Contracts are formed by the consent of the parties established through offer and acceptance. La. C.C. art. 1927. "[B]efore a [trial] court can find the existence of a valid written compromise agreement, it must find an offer and an acceptance." *McRae v. Ellis*, 93-1579 (La. App. 4 Cir. 2/11/94), 632 So.2d 841, 843 (citing *Felder v. Georgia Pacific Corp.*, 405 So.2d 521, 523-24 (La. 1981)).

Applying these principles, we find that the emails exchanged between counsel reflect, as a matter of law, the lack of an offer and an acceptance. We, thus, find Ms. Walker's argument regarding the Compromise creating a material issue of fact unpersuasive.

*Procedural Issue Regarding Summary Judgment Motion*

As noted elsewhere in this opinion, Ms. Walker's third, and last, assignment of error is that the arguments raised in Precept's summary judgment motion should have been raised in a peremptory exception. According to Ms. Walker, by filing a summary judgment motion instead of an exception, Precept deprived her of the opportunity to amend her pleadings in accordance with La. C.C.P. art. 934. This argument is unpersuasive.

Ms. Walker failed to file any pleading as to which Precept could respond by filing a peremptory exception. In any event, it is well settled that the right to amend is not absolute. Indeed, under the plain language of La. C.C.P. art. 934, "the right to amend is qualified by the restriction that the objections to the petition must be curable and the decision to allow amendment is within the trial court's discretion."

11

*Hester v. Hester*, 96-0189 (La. App. 4 Cir. 9/11/96), 680 So.2d 1232; *Whitney Nat'l Bank v. Jeffers*, 573 So.2d 1262, 1265 (La. App. 4th Cir. 1991) (the right to amend "is notably qualified by the restriction that the objections must be curable"). As this Court has observed, "[a]mendment is not permitted when it would constitute a vain and useless act." *Smith v. State Farm Ins. Companies*, 03-1580 (La. App. 4 Cir. 3/3/04), 869 So.2d 909; *Fortier v. Hughes*, 09-0180, p. 5 (La. App. 4 Cir. 6/17/09), 15 So.3d 1185, 1188. Such is the case here. Allowing an amendment would not cure the fact that any payment nullity claim Ms. Walker could have asserted is now prescribed under La. R.S. 47:2287(B)(1).

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**